1 STEVEN G. KALAR
Federal Public Defender
2 Northern District of California
JEROME E. MATTHEWS
3 Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
4 1301 Clay Street
Oakland, CA 94612
5 Telephone: (510) 637-3500
Facsimile: (510) 637-3507
6 Email: Jerome_Matthews@fd.org

Counsel for Defendant Maffei

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 18–174 YGR |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE** |
| v. | |
| MARTHA MAFFEI, | **Court:** Courtroom 1, 4th Floor |
| | **Hearing Date:** February 28, 2019 |
| Defendant. | **Hearing Time:** 3:00 p.m. |

**TO: DAVID ANDERSON, UNITED STATES ATTORNEY;
SAMANTHA SCHOTT, SPECIAL ASSISTANT UNITED STATES ATTORNEY**

NOTICE IS HEREBY GIVEN that on February 28, 2019, or as soon thereafter as counsel may be heard, Martha Maffei will move this Court for on order suppressing all fruits of the search of a cell phone, described in this case as evidence item S1RGM2, which was seized by law enforcement agents on April 12, 2018. This motion is made on the grounds that access to the data stored on the cell phone was derived from oral statements that law enforcement agents compelled Ms Maffei to make in violation of the Fourth, Fifth and Sixth Amendments to the United States Constitution.

The motion is based on this notice and motion, the following memorandum of points and authorities, the Fourth, Fifth and Sixth Amendments to the United States Constitution and all other applicable constitutional, statutory and case authority, and such evidence and argument as may be presented at the hearing of this motion.

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

BACKGROUND .............................................................................................................................1

    I.    The Local Law Enforcement Stop and Initial Search of Ms. Maffei's Residence ...........1

        A.    The Federal Warrants and Searches that Preceded the Search Challenged in this Motion ..................................................................................................................3

        B.    The April 2018 Warrant and the Unlawful Search of Ms. Maffei's iPhone .........4

ARGUMENT....................................................................................................................................6

    I.    The Search of Ms. Maffei's iPhone Exceeded the Scope of the Warrant, in Violation of Fourth Amendment ..................................................................................................6

    II.    The Agent Violated Ms. Maffei's Fifth Amendment Rights When He Compelled Her to Provide the Passcode to her Phone .........................................................................7

        A.    Compelling Ms. Maffei to Provide her Alphanumeric Password Violated her Fifth Amendment Privilege against Self-Incrimination Because it Constituted a Testimonial Communication ................................................................................7

        B.    Ms. Maffei's Statement Regarding her Passcode Must be Suppressed Because it Was Taken in Violation of *Miranda* ...................................................................9

            1.    Legal standard governing suppression of statements under *Miranda* ......9

            2.    Ms. Maffei's statement must be suppressed under *Miranda* ..................10

    III.    Compelling Ms. Maffei to Disclose Her Passcode was a Violation of her Sixth Amendment Right to Counsel.......................................................................................11

        A.    Ms. Maffei's Sixth Amendment Right to Counsel Attached when the Criminal Complaint was Filed Against Her.......................................................................11

        B.    SA Collins Deliberately Elicited Incriminating Information from Ms. Maffei After her Right to Counsel Attached ..................................................................12

CONCLUSION...............................................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Bivens v. Six Unknown Agents*,
    403 U.S. 388, (1971) .................................................................................................. 6

*Braswell v. United States*,
    487 U.S. 99 (1988) ..................................................................................................... 8

*Brewer v. Williams*,
    430 U.S. 387 (1977) ............................................................................................ 11, 12

*Davis v. United States*,
    512 U.S. 452 (1994) ................................................................................................ 10

*Doe v. United States*
    487 U.S. 201, (1988) ............................................................................................. 7, 8

*In re Grand Jury Subpoena Duces Tecum Dated March 25*,
    670 F.3d 1335 (11th Cir. 2012) ................................................................................. 8

*Kansas v. Ventris*,
    556 U.S. 586 (2009) ................................................................................................ 12

*Kuhlmann v. Wilson*,
    477 U.S. 436 (1986) ................................................................................................ 12

*Maine v. Moulton*,
    474 U.S. 159 (1985) ........................................................................................... 11, 12

*Massiah v. United States*,
    377 U.S. 201 (1964) ................................................................................................ 12

*Minnick v. Mississippi*,
    498 U.S. 146 (1990) ................................................................................................ 10

*Miranda v. Arizona*,
    384 U.S. 436 (1966) ............................................................................................ 9, 10

*Pennsylvania v. Muniz*,
    496 U.S. 582 (1990) .............................................................................................. 8, 9

*Rhode Island v. Innis*,
    446 U.S. 291 (1980) ................................................................................................ 10

*Riley v. California*,
    134 S. Ct. 2473 (2014) .............................................................................................. 6

*Rothgery v. Gillespie County*,
    554 U.S. 191 (2008) ................................................................................................ 11

*Search of a Residence in Oakland, California*,
    2019 WL 176937 (N.D. Cal. Jan. 10, 2019) ........................................................... 6, 7

*SEC v. Huang*,
    2015 WL 5611644 (E.D. Pa. Sept. 23, 2015) ........................................................ 8-9

*United States v. Green*,
    272 F.3d 748 (5th Cir. 2001) .................................................................................................. 8

*United States v. Hitchcock*,
    286 F.3d 1064 (9th Cir. 2002) ................................................................................................ 6

*United States v. Hitchcock*,
    298 F.3d 1021 (9th Cir. 2002) ................................................................................................ 6

*United States v. Hubbell*,
    530 U.S. 27 (2000) ......................................................................................................... 7, 8, 9

*United States v. Kim*,
    292 F.3d 969 (9th Cir. 2002) .................................................................................................. 9

*United States v. Kirschner*,
    823 F. Supp. 2d 665 (E.D. Mich. 2010) ................................................................................. 8

*United States v. Rettig*,
    589 F.2d 418 (9th Cir. 1978) .................................................................................................. 6

*United States v. Robinson*,
    358 F. Supp. 2d 975 (D. Mont. 2005) .................................................................................... 6

*United States v. Sedaghaty*,
    728 F.3d 885 (9th Cir. 2013) .............................................................................................. 6, 7

**Other**

U.S. Const. amend. IV ..................................................................................................................... 5

U.S. Const. amend. VI ................................................................................................................... 11

US. Const. amend. V ....................................................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Martha Maffei ("Ms. Maffei") is charged in a 27-count indictment with a series of offenses relating to an alleged fraud scheme. During the course of the state and subsequent federal investigation into this alleged scheme, law enforcement officers executed a series of search warrants. At issue in the present motion is the federal search warrant issued on April 9, 2018, which authorized officers to seize Ms. Maffei's mobile phone and granted the affiant-agent's request to compel Ms. Maffei to provide a biometric key to unlock the phone. Although the warrant only required Ms. Maffei to provide a biometric key, law enforcement agents compelled her to orally provide the alphanumeric passcode to her cell phone. Moreover, agents compelled her to make this statement despite the fact that her right to counsel had attached and the Federal Public Defender had been provisionally appointed to represent her. The resulting search of Ms. Maffei's cell phone was made in violation of her rights under the Fourth, Fifth and Sixth Amendments. Ms. Maffei moves to suppress all evidence recovered as a result of the search, as well as the unlawful fruits of the search.

## BACKGROUND

### I. The Local Law Enforcement Stop and Initial Search of Ms. Maffei's Residence

On November 5, 2017 officers from the San Mateo Police Department ("SMPD") conducted an enforcement stop on a Toyota Camry because the tail light was broken and the driver failed to yield to pedestrians in a crosswalk. *See* SMPD Police Report re: Traffic Stop, attached as Exhibit A[1], at MJM 0543. The driver was Ms. Maffei's husband Michael Maffei; Ms. Maffei was a passenger. *Id.* at MJM 0544. The officers checked Mr. Maffei's driver's license and determined that it had been suspended. *Id.* The officers subsequently conducted what they reported to be an "inventory search." *Id.*

During the claimed "inventory search," officers found Oxycodone pills, marijuana, and a purse containing approximately $11,000 in cash. *Id.* at MJM 0545. The officers also recovered two iPhones from the car. *Id.* In addition, SMPD found numerous USPS flat rate envelopes addressed to Ms. Maffei, checks from various people around the United States, and financial documents related to

---

[1] Defense counsel will be submitting exhibits separately following review for sensitive information.

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE
*MAFFEI*, CR 18–174 YGR

1   a bank in Nicaragua. *Id.* The reporting officer stated that he was under the impression that the
2   financial documents were related to drug trafficking, so he arrested Michael and Martha Maffei on
3   suspicion of committing "narcotics related crimes." *Id.* The officer then conducted a search of
4   Michael Maffei's person and located $873 in cash in his pants pocket. *Id.*

5   SMPD officers then went to the Maffeis' apartment to do a welfare check on the couple's two
6   children. *Id.* at MJM 0546. The officers alleged that while conducting a protective sweep of the
7   residence, they saw in plain view "indicia to additional narcotic and federal crimes." *Id.* That
8   evening, the SMPD officers applied for a search warrant for the Maffei residence, which was signed
9   by a judge from the San Mateo Superior Court the next day, November 6, 2017. *See* County of San
10  Mateo Search Warrant, attached as Exhibit B, at MJM 0557. The search warrant authorized the
11  seizure and search and of various narcotics and paraphernalia related to drug sales, cell phones and
12  other digital devices. *Id.* at MJM 0560. This search warrant also related to the two iPhones that the
13  police seized during the traffic stop. *Id.* at MJM 0561. The warrant allowed a physical or "finger
14  search" of the phones, and a forensic examination of the phones, and it stated that the physical/finger
15  search "includes the owner providing officers with the device's passcodes, or placing his/her
16  fingerprint to the device's screen, in order to unlock the [phone]." *Id.* at MJM 0562. During the
17  course of the search, the officers seized bank financial statements, a checkbook, returned checks,
18  printed e-mail correspondence, several iPads, and a MacBook Pro laptop. *See* San Mateo County
19  Search Warrant Return, attached as Exhibit C, at MJM 0555.

20  Ms. Maffei initially refused to provide the pass code for her iPhone, which was locked. *See*
21  Affidavit in Support of Complaint in *U.S. v. Maffei*, CR 18-174 YGR, Dkt. 1, attached as Exhibit D,
22  at ¶ 65. On November 6, 2017, after she had been released and then returned to the police
23  department to get her car, she provided two possible passcodes for the phone. *Id.* According to the
24  affidavit submitted by a federal agent for a later warrant, the San Mateo police did not attempt to
25  unlock the phones at that point. *Id.* On November 15, 2017, when a forensic examiner for SMPD
26  examined the phone, she reported that the phone was "already in set up mode" which indicated that
27  the phone had been "wiped." *See* SMPD Supplemental Report of Officer Bingham, attached as
28  Exhibit E, at MJM 5325. The examiner then used Cellebrite to extract the data that was stored on the

phone's SIM card. *Id.*

### A. The Federal Warrants and Searches that Preceded the Search Challenged in this Motion

Soon after Ms. Maffei's arrest by SMPD and its subsequent search of her residence, SMPD referred the case to federal authorities. Then, between December 12, 2017 and February 15, 2018, Special Agent Chris Collins ("SA Collins") of the U.S. Department of Labor, Office of Inspector General ("OIG") sought and was granted a series of federal search warrants related to the investigation into the alleged fraud scheme.

First, on December 12, 2017, Magistrate Judge Laporte signed search warrant number 17-71650, which authorized a search of Ms. Maffei's iPhone – the same phone that had been seized during the traffic stop and examined by the SMPD forensic officer. *See* N.D. Cal. Search Warrant No. 17-71650, attached as Exhibit F, at MJM 5389. After the warrant was issued, OIG agents obtained custody of the phone from SMPD. Exh. D at ¶ 65. According to an affidavit filed by SA Collins in support of a later warrant, after receiving the phone from SMPD, the federal agents "discovered that all of the contents on MAFFEI's iPhone appeared to have been remotely erased, and no information was able to be recovered." *Id.* at ¶ 66.

On December 12, 2017, Magistrate Judge Laporte also signed a second search warrant, number 17-71651, which authorized the search of Google e-mail content for four Google accounts alleged to be associated with the fraud scheme. *See* N.D. Cal. Search Warrant No. 17-71651, attached as Exhibit G, at MJM 05422. One of the four accounts to be searched under the warrant was MARTHAMAFFEI@GMAIL.COM. The search warrant returns were provided by Google on January 4, 2018. Exh. D at ¶ 8.

Magistrate Judge Laporte signed a third search warrant, number 17-71688, on December 29, 2017, for the four digital devices – two Apple MacBooks and two iPads – that were seized from Ms. Maffei's home by SMPD. *See* N.D. Cal. Search Warrant No. 17-71688, attached as Exhibit H, at MJM 05355. According to SA Collins, three of these devices were encrypted and because the federal investigators did not have the passcodes, they did not analyze them. Exh. D at ¶ 7. The agents were able to access the fourth device, but they then determined that its contents were not responsive to the

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE
*MAFFEI*, CR 18–174 YGR

3

1  warrant. *Id.*

2  Finally, on February 15, 2018, Magistrate Judge Westmore signed search warrant number 18-
3  70191, which authorized a search by Facebook for information associated with Ms. Maffei's account,
4  as well as another Facebook account of interest to investigators. *See* N.D. Cal. Search Warrant No.
5  18-70191, attached as Exhibit I, at MJM 5328.

6  **B.    The April 2018 Warrant and the Unlawful Search of Ms. Maffei's iPhone**

7  On April 9, 2018, SA Collins filed an affidavit in support of a search warrant, arrest warrant
8  and criminal complaint. Exh. D at ¶ 2. The application sought authorization for a search of Ms.
9  Maffei's apartment, her car, and "any digital devices belonging to MAFFEI, such as computer and
10 mobile phones, which are recovered pursuant to the searches and/or arrest of MAFFEI ("SUBJECT
11 DEVICES")." *Id.* at ¶ 3. Magistrate Judge Laporte signed the search and arrest warrants and the
12 criminal complaint on April 9, 2018. Exh. D, MJM 6038.

13 The affidavit set forth information from the ongoing investigation in support of SA Collins'
14 assertion that Ms. Maffei had obtained a new cell phone since her iPhone was seized on the day of
15 the traffic stop, and it asserted that there was probable cause to seize and search the new phone
16 because the fraud scheme was ongoing. *Id.* at ¶¶ 73-77.

17 The search warrant explicitly requested authority "to compel MAFFEI to provide a biometric
18 key (facial recognition or thumbprint) to unlock any SUBJECT DEVICE recovered during the
19 execution of the search warrants." *Id.* at ¶ 90. Although SA Collins mentioned that "Apple iPhones
20 require either a multi-digit passcode or a biometric key," the application only sought authority to
21 compel Ms. Maffei to provide a biometric key, and it did not request permission or authority from the
22 magistrate to compel Ms. Maffei to provide her passcode, whether through oral statements or other
23 means.

24 The search and arrest warrants were executed on April 12, 2018 by OIG with the assistance of
25 SMPD. *See* OIG Memorandum to File by SA Ferrer, attached as Exhibit J, at MJM 0843. When the
26 officers arrived at her house to execute the warrants, Ms. Maffei was quickly escorted out of her
27 residence, handcuffed, searched, and reportedly advised of her *Miranda* rights. *Id.*

28 Shortly thereafter, SA Collins and Special Agent Ana Ptaszek ("SA Ptaszek") transported Ms.

1  Maffei to the federal courthouse in San Francisco.  *Id.* at MJM 0844.  During the drive, SA Collins
2  told Ms. Maffei that "he was not going to ask her any questions," and that "he hoped that she would
3  cooperate in the investigation," because cooperating might help her situation.  *See* OIG Memorandum
4  to File by SA Collins, attached as Exhibit K, at MJM 0849.  Ms. Maffei did not make any comment
5  and requested to contact Paula Canny, the private attorney who had represented her on her state case.
6  *Id.*  SA Collins attempted to call Ms. Canny from his cell phone and left her a voicemail, indicating
7  that Ms. Maffei "had been arrested on a federal warrant for money laundering."  *Id.*  After Ms. Maffei
8  arrived at the federal courthouse and was transferred to the custody of the U.S Marshals, Ms. Canny
9  called SA Collins and informed him that she was unable to represent Ms. Maffei at the initial
10 appearance because of a recent surgery.  *Id.*

11     Approximately four hours after agents first executed the search and arrest warrants, Ms. Maffei
12 made her initial appearance, where Assistant Federal Public Defender Jodi Linker was provisionally
13 appointed to represent her.  *See* Minute Order re: Initial Appearance, Dkt. 3, attached as Exhibit L.
14 Ms. Maffei was remanded into the custody at the hearing.  *Id.*  An hour later, SA Collins and SA
15 Ptaszek visited Ms. Maffei in the Marshals holding cell on the 20th floor of the courthouse.  Exh. K
16 at MJM 0849.  During this encounter SA Collins compelled Ms. Maffei to provide the alphanumeric
17 password for her iPhone that had been seized from her apartment that morning.  *Id.* at MJM 0850.
18 SA Collins' report provides few details, stating only "SA Collins informed Maffei that he was there
19 to get the passcodes for the phone.  Maffei provided the passcode for evidence item S1RGM2,[22]"  *id.* at
20 MJM 0849-50, and the passcode she provided worked to unlock the phone.  *Id.* at MJM 0850.  Ms.
21 Maffei also told the agents she did not know the passcodes for the other three iPhones seized from
22 that day's search, because they belonged to her husband and her son.  *Id.*

---

[22] Agents seized four iPhones from the Maffeis' apartment on April 12, 2018.  Evidence item S1RGM2 was the iPhone for which Ms. Maffei orally provided the passcode.  Ms. Maffei identified S1RGM1 as her husband's phone, and she told SA Collins that S1RGM5 and S1RGM6 were her son's phones.  Exh. K at MJM 0850.

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE
*MAFFEI*, CR 18–174 YGR

5

# ARGUMENT

## I. The Search of Ms. Maffei's iPhone Exceeded the Scope of the Warrant, in Violation of Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and requires law enforcement officers to obtain a warrant before they may search the digital data on a cellular phone. *Riley v. California*, 134 S. Ct. 2473 (2014). It also "confines an officer executing a search warrant strictly within the bounds set by the warrant." *Bivens v. Six Unknown Agents*, 403 U.S. 388, 394 n.7 (1971). In deciding whether a search exceeded its lawful scope, a court may consider "both the purpose disclosed in the application for a warrant's issuance *and the manner of its execution*." *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978) (emphasis added).

Whether a search exceeds the scope of a search warrant is an objective inquiry that looks at the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search. *United States v. Hitchcock*, 286 F.3d 1064, 1071 (9th Cir. 2002), *superseded on other grounds by United States v. Hitchcock*, 298 F.3d 1021 (9th Cir. 2002). Even when an objective assessment "seems to indicate" that the magistrate issuing the warrant would have approved the search being challenged as illegal, the judge assessing the suppression motion "must refrain from relying on the [warrant-issuing] judge's apparent intent to expand the scope of the warrant" because the Constitution requires "that law enforcement officers executing a search warrant remain within the strict bounds of the warrant." *United States v. Robinson*, 358 F. Supp. 2d 975, 980 (D. Mont. 2005).

Here, the clear text of the warrant only permitted agents to obtain a biometric key to unlock the phone; it did not authorize the agents to compel Ms. Maffei to provide her passcode to them orally or by any other means. *See* Exh. D at ¶ 90. A recent decision by Magistrate Judge Westmore confirms that passcodes and biometric keys are indeed distinct. *See Search of a Residence in Oakland, California*, 2019 WL 176937 (N.D. Cal. Jan. 10, 2019), No. 4-19-70053-KAW, at *3 (noting that "there are times when the device will not accept the biometric feature and require the user to type in the passcode to unlock the device" and that the government "expresses some urgency with the need to compel the use of the biometric features to bypass the need to enter a passcode"). One method of

unlocking the phone is not a substitute for the other, and therefore Agent Collins unreasonably exceeded the scope of the warrant when he forced Ms. Maffei to provide her passcode when only one of those methods – use of a biometric key – was authorized.  *Cf. United States v. Sedaghaty*, 728 F.3d 885, 915 (9th Cir. 2013) (finding Fourth Amendment error where magistrate judge properly authorized the warrant but the agents did not follow it).

Because the manner of the search of Ms. Maffei's iPhone exceeded the scope of the warrant, the evidence resulting from this search must be suppressed in accordance with the exclusionary rule. *Sedaghaty*, 728 F.3d at 915 (stating that the exclusionary rule "generally bars admission of the evidence seized that was beyond the scope of the warrant").

## II. The Agent Violated Ms. Maffei's Fifth Amendment Rights When He Compelled Her to Provide the Passcode to her Phone

Even if the Court finds that there was no Fourth Amendment violation in the execution of the warrant, it may nevertheless determine that the search of Ms. Maffei's phone was unreasonable if the government violated another constitutional right in the course of the seizure and search. *Search of Oakland Residence*, 2019 WL 176937, at *1.  Here, SA Collins violated Ms. Maffei's Fifth Amendment right against self-incrimination when he compelled her to provide her alphanumeric password, and her right not to be questioned when she was subjected to a custodial interrogation after asking for counsel.

### A. Compelling Ms. Maffei to Provide her Alphanumeric Password Violated her Fifth Amendment Privilege against Self-Incrimination Because it Constituted a Testimonial Communication

The Fifth Amendment provides that "no person…shall be compelled in any criminal case to be a witness against himself."  US. Const. amend. V.  To prove a violation of the privilege against self-incrimination, an individual must show three things: (1) compulsion, (2) a testimonial communication, and (3) self-incrimination.  *United States v. Hubbell*, 530 U.S. 27, 34 (2000).  When Ms. Maffei was ordered to provide her passcode it constituted a compelled testimonial communication, which violated her rights under the Fifth Amendment.  The Court should therefore suppress the statement and the search that resulted from it.

The privilege against self-incrimination distinguishes between compelled "testimony," which is

1  protected, and rote physical acts, which generally are not. *Id.* at 43 ("mere physical acts" are not
2  testimonial if they do not "disclose the content of [an individual's] own mind."). The testimonial
3  nature of a communication does not require spoken word; rather, it requires, by "word or deed," a
4  truthful expression of the "contents of an individual's mind." *Doe v. United States ("Doe II")*, 487
5  U.S. 201, 219 n.9 (1988) (Stevens, J., dissenting). Physical acts may also be testimonial if "they
6  probe the state of mind, memory, perception, or cognition of the witness." *Braswell v. United States*,
7  487 U.S. 99, 126 (1988) (Kennedy, J. dissenting). In short, where the compelled evidence requires an
8  individual to have a "consciousness of the facts" and reveal "the operations of his mind," it violates
9  the privilege against self-incrimination. *Doe II*, 487 U.S. at 211.

10  The testimonial nature of the recollection and use of a password does not turn on whether a
11  suspect is required to announce the password to law enforcement or whether the suspect unlocks the
12  device on his own. *Doe II*, 487 U.S. at 213 (noting that the Fifth Amendment is intended to "spare
13  the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the
14  offense"). Rather, it is the "extortion of information from the accused" that triggers the privilege.
15  *Pennsylvania v. Muniz*, 496 U.S. 582, 594 (1990) (internal quotation and citation omitted). The act
16  of producing a password "itself may communicate 'statements of fact.'" *Hubbell*, 530 U.S. at 36.
17  For example, while requiring a person to provide a key that would unlock a safe is non-testimonial,
18  requiring a person to disclose to law enforcement the combination to a safe is testimonial. *See*
19  *Hubbell*, 530 U.S. at 43.

20  It is settled law that the Fifth Amendment protects a suspect from being compelled to recall and
21  divulge a memorized security code. *See Hubbell*, 530 U.S. at 43; *Doe II*, 487 U.S. at 210 n.9; *see*
22  *also United States v. Green*, 272 F.3d 748, 753 (5th Cir. 2001) (applying *Doe* to hold that suspect's
23  right against self-incrimination was violated where, following his request to consult an attorney,
24  police requested he open combination locks to physical containers wherein evidence was found).
25  More to the point, numerous courts have applied this principle to electronic devices capable of
26  storing data and held that the compelled recollection and disclosure of a memorized alphanumeric
27  password is testimonial. *See In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670
28  F.3d 1335, 1346 (11th Cir. 2012) (noting that decryption "of the hard drives would require the use of

the contents of Doe's mind and could not be fairly characterized as a physical act that would be nontestimonial in nature."); *United States v. Kirschner*, 823 F. Supp. 2d 665, 669 (E.D. Mich. 2010) (holding that a subpoena for computer passwords would have required the suspect "to divulge through his mental process his password."); *SEC v. Huang*, 2015 WL 5611644, at *3 (E.D. Pa. Sept. 23, 2015) (unpub.) (holding that defendant may "properly invoke the Fifth Amendment privilege to avoid the production of the passwords").

Here, law enforcement officers compelled Ms. Maffei to truthfully recall from her memory the alphanumeric password to her iPhone, which they subsequently used to unlock and access its data. This is precisely the type of "extortion of information" that triggers the Fifth Amendment privilege against self-incrimination. *Muniz*, 496 U.S. at 594. In declaring that he was "there to get the passcodes," SA Collins compelled Ms. Maffei to use her memory and, in effect, reveal the contents of her mind. Exh. K at MJM 0849-50. This was not a physical act akin to providing a key to unlock a safe that might be nontestimonial in nature; rather, SA Collins forced Ms. Maffei to provide the combination to the safe itself. *See Hubbell*, 530 U.S. at 43. The Court therefore should hold that the compelled recollection and use of a memorized password, stored only in Ms. Maffei's mind, was testimonial and protected by the Fifth Amendment.

Because Ms. Maffei's statement regarding her passcode was compelled in violation of her privilege against providing testimonial communication, the Court must suppress her statement and the fruits of the search that resulted from that compelled testimony.

**B.  Ms. Maffei's Statement Regarding her Passcode Must be Suppressed Because it Was Taken in Violation of *Miranda***

Ms. Maffei's statement to investigators regarding the passcode to her cell phone was made in violation of her rights against self-incrimination under *Miranda*. Ms. Maffei made the statement to the officers after she invoked her right to counsel, and it was made as the result of a custodial interrogation. Therefore her statement and the resulting search must be suppressed.

**1.  Legal standard governing suppression of statements under *Miranda***

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that because of the inherently coercive nature of custodial interrogation, a person must be advised of his or her

1  constitutional rights – including the right to an attorney and the right to remain silent – prior to
2  questioning.  384 U.S. at 444.  *Miranda*'s protections apply when an individual has been subjected to
3  an "interrogation" while in "custody."  *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002).  The
4  government can introduce an incriminating statement made during a custodial interrogation only if it
5  demonstrates that the defendant voluntarily, knowingly and intelligently waived his or her *Miranda*
6  rights.  *Miranda*, 384 U.S. at 475.

        **2.**      **Ms. Maffei's statement must be suppressed under *Miranda***

8        First, it is clear that Ms. Maffei was in custody for purposes of *Miranda* analysis at the time
9  that she was compelled to give the statement about her passcode.  Early in the morning on April 12,
10  2018, Ms. Maffei was arrested, handcuffed, searched and transported to court in a law enforcement
11  vehicle.  Exh. J at MJM 0843.  SA Collins noted that he read Ms. Maffei her *Miranda* rights at the
12  time of her arrest.  She was under the continuous control of federal agents and U.S. Marshals from
13  the time she was arrested at approximately 7:00 a.m. until the agents came to speak to her in the
14  Marshals lockup at 11:40 a.m.  *Id.*
15        As to interrogation, SA Collins stated in his report that he went with SA Ptaszek to see Ms.
16  Maffei in the lock up after her initial appearance and "informed Maffei that he was there to get the
17  passcodes for the phone."  Exh. K at MJM 0850.  For the purposes of *Miranda*, an interrogation
18  refers not only to "express questioning" but also its functional equivalent, which is "any words or
19  actions on the part of the police (other than those normally attendant to arrest and custody) that the
20  police should know are reasonably likely to elicit an incriminating response from the suspect."
21  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  Here, SA Collins' statement to Ms. Maffei that "he
22  was here to get the passcodes" was clearly designed to elicit the incriminating statement that it in fact
23  produced.  Notably, when SA Collins spoke to Ms. Maffei a couple of hours earlier in the car (post-
24  *Miranda* warning) and told her that she hoped she would cooperate, she did not respond.  But when
25  told in the lockup that he was "there to get the passcodes," SA Collins' questioning elicited an
26  incriminating response.
27        The record nowhere indicates that Ms. Maffei waived her right under *Miranda* to be questioned
28  only with counsel present.  To invoke a right to counsel under the Fifth Amendment, a suspect must

unambiguously assert his or her right to counsel. *Davis v. United States*, 512 U.S. 452, 459 (1994). A suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present. *Minnick v. Mississippi*, 498 U.S. 146, 151 (1990). Ms. Maffei did precisely that: after being *Mirandized* at the time of her arrest, MJM 0843, she unambiguously invoked her right to counsel when she attempted to contact her lawyer en route to the federal courthouse. Exh. K at MJM 0849.

Because Ms. Maffei's statement regarding her passcode was the result of custodial interrogation that was impermissible under *Miranda*, her statement and the resulting search must be suppressed.

### III. Compelling Ms. Maffei to Disclose Her Passcode was a Violation of her Sixth Amendment Right to Counsel

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel attaches when the "government . . . use[s] the judicial machinery to signal a commitment to prosecute" such that the "suspect" becomes the "accused." *Rothgery v. Gillespie County*, 554 U.S. 191, 211 (2008). Suspects are thus entitled to the help of an attorney once formal proceedings have been initiated, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Brewer v. Williams*, 430 U.S. 387, 415 (1977). Once adversarial proceedings have commenced, law enforcement has "an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Maine v. Moulton*, 474 U.S. 159, 171 (1985). Because Ms. Maffei was compelled to provide her passcode outside the presence of counsel and after the right to counsel had attached, the Court must suppress this statement and the search that resulted from it.

### A. Ms. Maffei's Sixth Amendment Right to Counsel Attached when the Criminal Complaint was Filed Against Her

Ms. Maffei's right to counsel attached on April 9, 2012, when the criminal complaint was filed in the Northern District of California. Dkt. 1. At that time, the Government used its "judicial machinery to signal a commitment to prosecute," which ensured Ms. Maffei's Sixth Amendment protections. *See Rothgery*, 554 U.S. at 211.

The Court provisionally appointed the Federal Public Defender's office at Ms Maffei's initial appearance on April 12, 2018, *see* Exh. L, and within the hour SA Collins and SA Ptaszek came to talk to her in the Marshals lockup. No attorney was present. SA Collins, in questioning Ms. Maffei outside of the presence of her attorney, violated his "affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *See Moulton*, 474 U.S. at 170 n.7. This was not an innocuous oversight but a violation of a core constitutional right that could have implications for the rest of Ms. Maffei's defense. As the Supreme Court has declared, to deny access to counsel during the pre-trial phase keeps a suspect from receiving "effective representation by counsel at the only stage when legal aid and advice would help." *Massiah v. United States*, 377 U.S. 201, 204 (1964) (citation omitted).

**B.     SA Collins Deliberately Elicited Incriminating Information from Ms. Maffei After her Right to Counsel Attached**

To trigger Sixth Amendment protections, law enforcement must "deliberately elicit" incriminating information in the absence of a suspect's counsel. *See Massiah*, 377 U.S. at 204. The Supreme Court has held that the government need not engage in explicit questioning to trigger Sixth Amendment protections. *See Williams*, 430 U.S. at 401; *see also Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986) ("the defendant must demonstrate that the police and their informant took some action, beyond mere listening, that was designed deliberately to elicit incriminating remarks."). Here, SA Collins' statement that "he was there to get the passcodes for the phones" was aimed at deliberately eliciting incriminating information in support of the government's case against Ms. Maffei. Exh. K at MJM 0850.

Further, the Supreme Court has held that the right to be free of such uncounseled questioning is infringed at the time of the interrogation, not when it is admitted into evidence. *Kansas v. Ventris*, 556 U.S. 586, 592 (2009). Ms. Maffei's Sixth Amendment was thus violated the instant SA Collins elicited the passcodes from her outside the presence of counsel.

Because Ms. Maffei's Sixth Amendment right to counsel had attached and was subsequently violated by uncounseled questioning, the Court should suppress Ms. Maffei's statement and the resulting search.

**CONCLUSION**

For the reasons stated, this Court should suppress the statement Ms. Maffei made regarding the passcode to her cellular phone, the search of her phone that resulted from the illegally compelled statement, and all evidence subsequently derived from the search of her phone.

Dated: January 24, 2019

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

          /S
JEROME E. MATTHEWS
Assistant Federal Public Defender