STEVEN G. KALAR
Federal Public Defender
Northern District of California
JEROME MATTHEWS
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:  (510) 637-3500
Facsimile:  (510) 637-3507
Email:  Jerome_Matthews@fd.org

Counsel for Defendant Maffei

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTHA MAFFEI,<br><br>    Defendant. | Case No.: CR 18–00174 YGR<br><br>**NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE; MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**<br><br>Court:      Courtroom 1, 4th Floor<br>Date:       July 12, 2019<br>Time:       11:00 a.m. |

**TO:  DAVID ANDERSON, UNITED STATES ATTORNEY; AND
        SAMANTHA SCHOTT, SPECIAL ASSISTANT UNITED STATES ATTORNEY**

NOTICE IS HEREBY GIVEN that on July 12, 2019, or as soon thereafter as counsel may be heard, Martha Maffei will move this Court for on order suppressing all fruits of the warrantless search of her car by officers of the San Mateo Police Department on November 5, 2017, including, but not limited to, statements made by Ms Maffei during the search and her subsequent arrest. This motion is made on the grounds that the search and arrest were unlawful and conducted in violation of

the Fourth Amendment to the United States Constitution.

The motion is based on this notice and motion, the following memorandum of points and authorities, the Fourth Amendment to the United States Constitution and all other applicable constitutional, statutory and case authority, and such evidence and argument as may be presented at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This motion arises from a traffic stop. San Mateo Police Department ["SMPD"] officers pulled over a car, in which Martha Maffei was a passenger, for traffic violations. After obtaining Ms Maffei's identification and beginning to write a citation for the driver, the officers—without a warrant—decided to search the vehicle. This prolongation of the stop was unlawful, and the resulting search of the car was presumptively unconstitutional. The government cannot carry its burden of establishing that the prolongation of the stop and the subsequent warrantless search did not violate the Fourth Amendment. Accordingly, the Court must suppress all fruits of the officers' illegal conduct.

### BACKGROUND

At about 5:19 p.m. on November 5, 2017, two SMPD officers in a marked police car pulled over a Toyota Camry for a broken taillight and failing to yield to pedestrians. San Mateo Police Report, attached as Exhibit A to the Declaration of Jerome Matthews ["Matthews Decl."], at Bates 544. The driver of the car, Michael Maffei, pulled into a Walgreens parking lot and parked in a parking stall. *Id*. Mr Maffei's wife, defendant Martha Maffei, was the registered owner of and a passenger in the car. *Id*.

SMPD Officer Haobsh advised Mr Maffei of his traffic violations and obtained his driver's license, registration and proof of insurance. *Id*. Officer Haobsh also obtained Ms Maffei's driver's license. *Id*. The officer smelled marijuana coming from the passenger compartment, which he claimed was a violation of California Vehicle Code § 23222(b).[1] *Id*.

---

[1] That subsection prohibits the unauthorized possession of loose or an opened container of marijuana while driving. Cal. Veh. Code § 23222(b)(1). It does not apply if the marijuana is in the trunk, Cal. Veh. Code § 23222(b)(2), or if the marijuana is in a closed container and the person has a current medical marijuana card or physician's recommendation. Cal. Veh. Code § 23222(c). An

MOTION TO SUPPRESS
*MAFFEI*, CR 18–00174 YGR

1  Officer Haobsh did a DMV records check, which indicated that Mr Maffei's license was
2  suspended. *Id.* The officer began writing a traffic citation for Mr Maffei. *Id.* Before he finished
3  writing the citation, however, Officer Haobsh decided to search the car. *Id.* He requested backup to
4  help with the search. *Id.* Two additional officers arrived approximately nine minutes after the
5  officers initiated the stop.

6  When the back-up officers arrived, Officer Haobsh told Mr Maffei that his license was
7  suspended; Mr Maffei was surprised and told the officer that "he already fixed the issue with the
8  DMV." *Id.* Officer Haobsh claimed that, because of the smell of marijuana, he was required to
9  inventory and tow the car based on California Vehicle Code § 22651(p).[2] *Id.* He ordered Mr Maffei
10 out of the car, pat-searched him for weapons and detained him in the police car. *Id.* He ordered Ms
11 Maffei out of the car, "visually inspected her for weapons," and directed her to sit on the curb. *Id.*
12 Officer Haobsh "requested a tow for the Toyota." *Id.*

13 Officer Haobsh asked Mr Maffei for consent to search the car. *Id.* He declined consent but
14 told the officer there was marijuana in the car "and that he had a cannabis card." *Id.* Officer Haobsh
15 asked for consent from Ms Maffei, who also declined. *Id.*

16 Officer Haobsh then searched the Maffeis' car. *Id.* at Bates 545. He found 4.3 grams of
17 marijuana, 48 oxycodone pills, nearly $13,000 cash and financial documents. *Id.* at Bates 541-42,
18 545. After the search, Officer Haobsh arrested Mr Maffei and Ms Maffei for state "narcotics related
19 crimes." *Id.* at Bates 545. He advised Ms Maffei of her rights and questioned her. *Id.* Ms. Maffei
20 gave the officers consent to search her home but denied them access to her cell phone. *Id.* at Bates

---

offense under the statute is "an infraction punishable by a fine of not more than one hundred dollars." Cal. Veh. Code § 23222(b)(1).
[2]California law provides that police "may remove a vehicle" "[i]f the peace officer issues the driver of a vehicle a notice to appear for [driving on a suspended or revoked license], and the vehicle is not impounded [because it was used in commission of a crime]. A vehicle so removed from the highway or public land, or from private property after having been on a highway or public land, shall not be released to the registered owner or his or her agent, except upon presentation of the registered owner's or his or her agent's currently valid driver's license to operate the vehicle and proof of current vehicle registration, to the impounding law enforcement agency, or upon order of a court." Cal. Veh. Code § 22651(p).
The police report identifies Mr Maffei's traffic violation as California Vehicle Code § 14601.1(a), Matthews Decl., Exh. A, at Bates 539, which requires the person to know of the suspension or revocation.

MOTION TO SUPPRESS
*MAFFEI*, CR 18–00174 YGR

3

545-46.

Officers went to the Maffeis' home and entered it without a warrant. *Id.* at Bates 546. The officers then obtained a state warrant to search the home, where they found additional evidence. *Id.* at Bates 547. The affidavit in support of the warrant recited the evidence found during the warrantless searches of the car and the Maffeis' home. San Mateo County Search Warrant and Affidavit, Matthews Decl., Exh. B, at Bates 565-67. When Ms Maffei was released from jail, she was granted "a tow release for her Toyota." Matthews Decl., Exh. A, at Bates 550.

The present indictment is based in part on documents found in the car and subsequent searches of her home.

## ARGUMENT

"Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). When the government fails to carry its heavy burden, *id.* at 1142 n.1, all fruits of the Fourth Amendment violation must be suppressed. *Id.* at 1143. The government here cannot provide a valid justification for Officer Haobsh's prolongation of the traffic stop. Nor can the government meet the heavy burden of justifying the warrantless search of the Maffeis' car. Thus, all fruits of the unconstitutional search must be suppressed.

**I.  The Government Must Establish That The Initial Warrantless Seizure Here Was Permissible Under The Fourth Amendment**

For the duration of a traffic stop, an officer seizes everyone inside the vehicle. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). When, through an intentional "show of authority," a police officer restrains a person's freedom of movement, that person is seized by the police and entitled to challenge the government's action under the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 254 (2007). Even a brief detention of a driver inside a vehicle, for a limited purpose, constitutes a "seizure of persons" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 810 (1996).

Ms Maffei was seized when SMPD officers stopped the Toyota Camry in which she was a

passenger. The officers further restricted her movement when they ordered her out of the car, inspected her for weapons and directed her to sit on the curb while they searched her car. The officers did not have a warrant for this seizure. Accordingly, the government bears the burden of establishing that the warrantless seizure did not violate the Fourth Amendment. Unless it can do so, the seizure violated the Fourth Amendment, and all fruits thereof must be suppressed.

## II. The Government Cannot Carry Its Burden Of Establishing That The Prolongation Of The Traffic Stop Was Permissible Under The Fourth Amendment

While it is true that a seizure of a vehicle and its driver for a traffic violation justifies an investigation of that violation, *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015), the duration of that seizure may last only as long as is necessary to investigate the traffic violation itself and related inquiries. *Id*. "Authority for the seizure thus ends when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id.*

In the same vein, permissible traffic stop-related inquiries are limited to those that serve the objective of enforcing the vehicle code. *Id.* at 1615. They may include "checking the *driver's* license, determining whether there are outstanding warrants against *the driver*, and inspecting the automobile's registration and proof of insurance." *Id*. (emphases added). Not so, however, when it comes to a passenger. Continuing its line of decisions narrowing what police may do vis a vis a passenger during a traffic stop, the Ninth Circuit recently held that obtaining a *passenger's* identification "is not part of the mission of a stop." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019)[3]. The Court noted not only that "[t]he identity of a passenger . . . will ordinarily have no relation to a driver's safe operation of a vehicle" but also that "several minutes of additional questioning" to determine the identity of a passenger, when the officer had no reasonable, particularized suspicion that the passenger "had committed, was committing, or was about to commit any crimes" was an unlawful seizure. *Id.* 868-69.

So too here. The officers stopped the Maffeis' car based on a broken taillight and failing to

---

[3] The Court for the first time observed that its prior decision in *United States v. Turvin*, 517 F.3d 1097 (9th Cir. 2018), which in limited circumstances permitted police to ask questions unrelated to the traffic stop, was inconsistent with and had been "partially abrogated" by the Supreme Court's decision in *Rodriguez*. *Landeros*, 913 F.3d at 866 – 67.

yield to pedestrians in a crosswalk.  Officer Haobsh then permissibly checked Mr Maffei's driver's license, registration and proof of insurance and determined that he had a suspended license.  What Officer Haobsh was *not* authorized to do, under *Rodriguez* and *Landeros*, was (1) obtain and check Ms Maffei's license, because he did not have reasonable suspicion that she was involved in any criminal activity and (2) wait for additional officers to arrive, remove the Maffeis from the car, pat-search Mr Maffei and put him in the back of a police car, visually inspect Ms Maffei and order her to sit on the curb, and request consent to search from both Mr and Ms Maffei -- all so Office Haobsh could search the Maffeis' car.

The officer's actions and his subsequent warrantless and unjustified search were wholly unrelated to his legitimate mission of investigating and processing the traffic violations.  Because the officers unreasonably prolonged the initial stop, their conduct violated the Fourth Amendment.  All fruits of the unreasonable warrantless seizure must therefore be suppressed.

**III.   The Government Cannot Carry Its Burden Of Establishing That The Warrantless Search Of Maffeis' Car Was Permissible Under The Fourth Amendment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV. "A warrantless search is unconstitutional unless the government demonstrates that it falls within certain established and well-defined exceptions to the warrant clause." *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009) (internal quotation marks and brackets omitted).  The government bears the burden of persuading the Court that a warrantless search does not violate the Fourth Amendment.  *Id.*  If the government does not carry its burden, all fruits of the warrantless search must be suppressed. *See, e.g.*, *United States v. Caseres*, 533 F.3d 1064, 1076 (9th Cir. 2008) (reversing district court's denial of motion to suppress because government did not carry its burden of justifying warrantless search).

The officers searched the Maffeis' car without a warrant.  The police report makes clear that police searched the car because they were going to have it towed.  *See* Matthews Decl., Exh. A, at Bates 544 (citing Cal. Veh. Code § 22651(p) as providing for "a required tow inventory" and stating that officer "requested a tow for the Toyota" before he searched car).  But there was no justification

for an inventory search.

Although "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic" and, once they legally impound, "may conduct an inventory search as long as it conforms to the standard procedures of the local police department," "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (internal quotation marks omitted). Thus, police may not impound and search a car under the inventory-search exception unless the government shows "a valid caretaking purpose." *Id.* "The fact that an impoundment complies with a state statute or police policy, by itself, is insufficient to justify an impoundment under the community caretaking exception." *Id.* at 1142; *see also Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) ("We begin with the premise . . . that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment").

For example, the Ninth Circuit has held that the government did not carry its burden of establishing a community caretaking purpose justifying impoundment and an inventory search, notwithstanding the arrest of the driver for driving on a suspended license and state law allowing impoundment when police take a driver into custody, because the "car was legally parked at the curb of a residential street two houses away from Caseres' home." *United States v. Caseres*, 533 F.3d 1064, 1074-75 (9th Cir. 2008); *see also Miranda*, 429 F.3d at 866 (holding that city did not justify impoundment of car that was parked owners' driveway after citing both owners for husband's unlawfully teaching wife to drive without a license). Similarly, when, as here, another person is present and legally able to remove the car, and the car may be driven legally, there is no valid community caretaking exception that would allow the police to inventory and tow it. *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996); *see Miranda*, 429 F.3d at 865, 866 (discussing *Duguay*). "The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *Duguay*, 93 F.3d at 353 (holding that government did not carry its burden of justifying impound and search where two people present when

defendant was arrested could have moved car).

The relevant police department policy is consistent with these principles. *See* SMPD Policy 510, attached as Matthews Decl., Exh. C. It provides that, "[w]hen circumstances permit . . . the handling employee should, prior to having the vehicle towed, make a good faith effort to notify the owner of the vehicle that it is subject to removal." *Id.* 510.2. Also, when the driver is arrested, SMPD's policies require police to consider "leaving a vehicle at the scene in lieu of storing" when the driver is arrested but "the licensed owner of the vehicle is present, willing, and able to take control of any vehicle not involved in criminal activity." *Id.* 510.2.3.

In this case, Ms Maffei was present, had a valid driver's license and no criminal record, and owned the car. Matthews Decl., Exh. A, at Bates 539, 544, 550, 554. The car had valid registration. *Id.* at Bates 554. The police knew these facts before they had the car towed. *Id.* at 539, 544, 550, 554. The government here cannot establish that the impoundment and inventory search of the Maffeis' car was reasonable given that Ms Maffei was present and legally able to move the car from the parking lot.

Neither can the government establish that the warrantless search of the car was lawful under the automobile exception. The only non-traffic offense the police report mentions, at least prior to the search, is a California Vehicle Code section that prohibits the unauthorized possession of loose or an opened container of marijuana while driving. Matthews Decl., Exh. A, at Bates 544 (citing Cal. Veh. Code § 23222(b)). But that statute does not apply if the marijuana is in a closed container and the person has a current medical marijuana card or physician's recommendation.[4] Cal. Veh. Code § 23222(c). Mr Maffei told the officer "that he had a cannabis card." Matthews Decl., Exh., A, at Bates 544. Accordingly, the smell of marijuana did not give the police probable cause to search the car. *Cf. United States v. White*, 732 Fed. Appx. 597, 598 (9th Cir. 2018) (unpublished) (holding that marijuana smell gave probable cause to search car where defendant "never explained [that he had a medical marijuana card] to the investigating officers, and possession of nonmedical marijuana was

---

[4] To reprise, it also does not apply if the marijuana is in the trunk of the car. Cal. Veh. Code § 23222(b)(2). Notably, an offense under the statute is "*an infraction* punishable by a fine of not more than one hundred dollars." Cal. Veh. Code § 23222(b)(1) (emphasis added).

then still a state crime"); *United States v. Brown*, 555 Fed. Appx. 838, 839 (10th Cir. 2014) (unpublished) (holding that burnt marijuana smell combined with defendant's comments gave probable cause to search car where his "comments about the provenance of his drugs also suggested pretty strongly that they didn't come from a state sanctioned medical marijuana source, and at the time of the events at issue only licensed medical (not recreational) marijuana was allowed under Colorado law").

Under these facts the Court must suppress all fruits of the search.

## CONCLUSION

For the reasons stated, Martha Maffei respectfully asks the Court to suppress all fruits of the unlawful, prolonged seizure of her person and the unlawful warrantless search of her car.

Dated:   June 6, 2019

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
_____
JEROME MATTHEWS
Assistant Federal Public Defender