STEVEN G. KALAR
Federal Public Defender
Northern District of California
JEROME MATTHEWS
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:  (510) 637-3500
Facsimile:  (510) 637-3507
Email:  Jerome_Matthews@fd.org

Counsel for Defendant Maffei

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARTHA MAFFEI,<br><br>Defendant. | **Case No.:** CR 18–00174 YGR<br><br>**MARTHA MAFFEI'S REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**<br><br>**Court:**  Courtroom 1, 4th Floor<br>**Date:**  July 12, 2019<br>**Time:**  11:00 a.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

    I.    Ms Maffei Was Unlawfully Detained ............................................................................. 1

        A.    Officer Haobsh's Conduct Exceeded the Traffic-Stop Mission ........................... 1

        B.    The Prolongation of the Stop Was Not Supported By Reasonable Suspicion ...... 3

    II.    The Search of the Car Violated the Fourth Amendment ................................................ 4

        A.    The Automobile Exception Does Not Apply Here ............................................... 4

        B.    The Warrantless Search of the Car Was Not Justified As an Inventory Search ... 7

            1.    The government's stated reasons fall short of the mark. ......................... 7

            2.    The search was an impermissible, pretextual search for drugs. ................ 9

    III.    The Inevitable Discovery Doctrine Does Not Apply Here ........................................... 11

    IV.    The Search of the Maffei's Home Was the Fruit of the Fourth Amendment Violations 12

        A.    The Government Has Not Carried Its Burden of Establishing That the Warrant Would Have Been Based On Probable Cause Absent The Search of the Car .... 12

        B.    The Government Has Not Carried Its Burden of Establishing That Ms Maffei Knowingly and Voluntarily Consented To the Search of Her Home ................. 14

        C.    The *Leon* Good-Faith Exception Does Not Apply ............................................ 15

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Commonwealth v. Cruz*,
 945 N.E.2d 899 (Mass. 2011) ................................................................................................ 7

*Commonwealth v. Overmyer*,
 11 N.E.3d 1054 (Mass. 2014) ......................................................................................... 5, 6, 7

*Herring v. United States*,
 555 U.S. 135 (2009) ............................................................................................................ 12

*Maryland v. Dyson*,
 527 U.S. 465 (1999) .......................................................................................................... 4, 5

*Miranda v. City of Cornelius*,
 429 F.3d 858 (9th Cir. 2005) .............................................................................................. 8, 9

*Nix v. Williams*,
 467 U.S. 431 444, n.5 (1984) ................................................................................................ 11

*United States v. Bradford*,
 2019 WL 2564082 (9th Cir. June 21, 2019) ........................................................................ 11

*United States v. Camou*,
 777 F.3d 932 (9th Cir. 2014) ................................................................................................ 12

*United States v. Cartwright*,
 630 F.3d 610 (7th Cir. 2010) ................................................................................................. 9

*United States v. Caseres*,
 533 F.3d 1064 (9th Cir. 2008) ............................................................................................... 8

*United States v. Cervantes*,
 703 F.3d 1135 ........................................................................................................................ 8

*United States v. Collins*,
 2018 WL 306696 (N.D. Cal. 2018) ...................................................................................... 6

*United States v. Davila*,
 2019 WL 1217288 (D. Nev. 2019) ....................................................................................... 3

*United States v. Evans*,
 122 F. Supp. 3d 1027 (D. Nev. 2015) ................................................................................ 3-4

*United States v. Evans*,
 786 F.3d 779 (9th Cir. 2015) ............................................................................................ 1-2, 4

*United States v. Gorman*,
 859 F.3d 706 (9th Cir. 2017) ................................................................................................. 2

*United States v. Hylton*,
 2017 WL 6521322 (D. Nev. 2017) ....................................................................................... 6

*United States v. Job*,
 871 F.3d 852 (9th Cir. 2017) ................................................................................................. 4

*United States v. Landeros*,
  913 F.3d 862 (9th Cir. 2019) ............................................................................................ 1, 3, 4

*United States v. Martinez*,
  2018 WL 3861831 (N.D. Cal. 2018) ...................................................................................... 6-7

*United States v. Nora*,
  765 F.3d 1049 (9th Cir. 2014) ................................................................................................. 13

*United States v. Phillips*,
  9 F. Supp. 3d 1130 (E.D. Cal. 2014) ......................................................................................... 6

*United States v. Shetler*,
  665 F.3d 1150 (9th Cir. 2011) ................................................................................................. 12

*United States v. Thomas*,
  447 F.3d 1191 (9th Cir. 2006) ................................................................................................... 1

*United States v. Turnbow*,
  2019 WL 654456 (D. Nev. 2019) .................................................................................. 9, 10, 11

*United States v. Underwood*,
  725 F.3d 1076 (9th Cir. 2013) ............................................................................................ 13-14

*United States v. Vasey*,
  834 F.2d 782 (9th Cir. 1987) ............................................................................................ 13, 15

*United States v. Wanless*,
  882 F.2d 1459 (9th Cir. 1989) ................................................................................................. 13

*United States v. Washington*,
  649 F. Supp. 2d 959 (D. Alaska 2009) ...................................................................................... 5

*United States v. Wellins*,
  654 F.2d 550 (9th Cir. 1981) ................................................................................................... 14

*United States v. Zamora*,
  2017 WL 3186655 (D. Nev. 2017) ............................................................................................ 3

*Utah v. Strieff*
  Utah v. Strieff, 136 S. Ct. 2056 (2016) .................................................................................... 12

**Statutes**

Cal. Health & Safety Code § 11362.1 ............................................................................................ 6

Cal. Veh. Code § 22651 ................................................................................................ 7, 8, 9, 11

Cal. Veh. Code § 25950 .................................................................................................................. 9

California Vehicle Code section 14601.1 ....................................................................................... 7

California Vehicle Code § 23222 ................................................................................................... 5

# INTRODUCTION

The government believes that San Mateo Police acted lawfully in detaining Ms Maffei, searching her car, and, after obtaining a search warrant, searching her apartment. Cases applying settled Fourth Amendment principles say otherwise. The Court should grant this motion.

## I.   Ms Maffei Was Unlawfully Detained[1]

### A.   Officer Haobsh's Conduct Exceeded the Traffic-Stop Mission

The undisputed facts make clear that Officer Haobsh requested, obtained and conducted a "check" of Ms Maffei's driver's license. Declaration of San Mateo Police Officer Michael Haobsh ("Haobsh Decl.") ¶ 12; Exhibit A to Declaration of Jerome E. Matthews in Support of Motion to Suppress Evidence ["Matthews Decl."] (Bates 544). He further prolonged the stop by summoning back-up officers and waiting for them to arrive "to assist . . . with removing the vehicle's occupants and searching the vehicle." Matthews Decl., Exh. A (Bates 544). Officer Haobsh did not talk to Michael Maffei about his suspended license until the back-up officers arrived, *id.*, which was approximately nine minutes after he first initiated the traffic stop. Haobsh Decl., ¶ 14. By summoning and waiting for the arrival of the other officers before he contacted Michael Maffei about his suspended license, Officer Haobsh prolonged the stop.

The government suggests that Officer Haobsh did not prolong the stop by asking Ms Maffei for her license because she complied with the officer's request. Gov't Opp. at 9. But it does not address the time it took for the officer to check her license or the time it took for the officer to call for back-up officers and to wait for them to arrive, all of which occurred before the officer completed the citation. Officer Haobsh's declaration makes clear these acts prolonged his investigation and processing of Michael Maffei's traffic violations. Haobsh Decl. ¶¶ 12-15. Even if the prolongation lasted only "several minutes," it was impermissible unless "(1) part of the stop's 'mission' or (2) supported by independent reasonable suspicion." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019); *see also United States v. Evans*, 786 F.3d 779, 786-87 (9th Cir. 2015) (holding that ex-felon registration check, that was not part of traffic-stop mission and took eight minutes, violated

---

[1] The owner of a car has standing to object to an unconstitutional search. *United States v. Thomas*, 447 F.3d 1191, 1197 (9th Cir. 2006).

REPLY IN SUPPORT OF MOTION TO SUPPRESS
*MAFFEI*, CR 18–00174 YGR

1

1  Fourth Amendment absent independent reasonable suspicion); *United States v. Ward*, No. 16-cr-
2  00485-JST (N.D. Cal. 2017) (unpublished) (Dkt. 22 at 6) (order granting motion to suppress based on
3  *Rodriguez* because officer asked question unrelated to mission of stop even though "questions may
4  only have lasted a few minutes"); *United States v. Gorman*, 859 F.3d 706, 715 (9th Cir. 2017) ("The
5  Court is clear . . . that these 'unrelated investigations' are impermissible if they 'lengthen the roadside
6  detention,'" quoting *Rodriguez*, 135 S. Ct. at 1614).

7  The government suggests, again without factual or legal support, that obtaining the driver's
8  license of the owner of a car with a broken taillight was part of the mission of the traffic stop. Gov't
9  Opp. at 10. In *Landeros*, the Ninth Circuit "assume[d]" that the officer "was permitted to prolong the
10 initially lawful stop to ask the two women [unrelated to Landeros] for identification, because he had
11 reasonable suspicion they were underage." *Id.* at 867 (citing *Rodriguez v. United States*, 135 S. Ct.
12 1609, 1615 (2015)). But it also emphasized that "a demand for a passenger's identification is not part
13 of the mission of a traffic stop." *Id.* at 868. Citing *Rodriguez*, it listed permissible actions as
14 "'checking the driver's license, determining whether there are outstanding warrants against the
15 driver, and *inspecting* the automobile's registration and proof of insurance.'" *Id.* (quoting *Rodriguez*,
16 135 S. Ct. at 1615; emphasis added).

17 The government lastly contends that asking for Ms. Maffei's license was part of the traffic-stop
18 mission because, as the owner of the car, "she would be the individual ultimately responsible for
19 repairing the broken taillight." Gov't Opp. at 10. But before he requested Ms Maffei's license Officer
20 Haobsh had obtained the "vehicle registration and proof of insurance." Haobsh Decl. ¶ 12. The
21 government has not offered any reason to believe these documents were not valid. Even if this
22 rationale justified the officer asking Ms Maffei for her identification, it would not justify his
23 "conduct[ing] a records check." Haobsh Decl. ¶ 13. It does not matter for purposes of a traffic stop
24 for a broken taillight whether the owner of the car has a criminal record.

25 The government has not offered a traffic-stop-mission-related justification for Officer Haobsh's
26 pausing from preparation of the traffic citation to summon and wait for back-up officers. Although
27 the government states that the officer "called for back-up officers because he believed that the car
28 would need to be towed," Gov't Opp. at 10, Officer Haobsh's report states that he "requested an

REPLY IN SUPPORT OF MOTION TO SUPPRESS
*MAFFEI*, CR 18–00174 YGR

2

additional police unit to assist [him] with removing the vehicle's occupants and searching the vehicle." Matthews Decl., Exh. A (Bates 544). As discussed below, there was no lawful basis for an inventory search or tow, and thus no justification for this prolongation of the traffic stop.

### B. The Prolongation of the Stop Was Not Supported By Reasonable Suspicion

The government states that prolongation of the stop was supported by independent reasonable suspicion. Gov't Opp. at 10. "*Rodriguez* requires that a traffic stop may be extended to conduct an investigation into matters other than the original traffic violation only if the officers have reasonable suspicion of an independent offense." *Landeros*, 913 F.3d at 867. The only fact the government here identifies that is "independent" of the reported traffic violations the smell of marijuana. Gov't Opp. at 10. Yet the facts demonstrate that Officer Haobsh did not detour from his traffic-stop mission to investigate the smell.

According to Officer Haobsh's declaration, he smelled marijuana as soon as he approached the car. Haobsh Decl. ¶ 10. Still, he did not at that point ask the Maffeis about or conduct any investigation related to the smell of marijuana.[2] Instead, he: obtained and checked the licenses for both Maffeis; called back-up officers; "began drafting a citation for Michael Maffei for driving with a suspended license"; discussed the suspension with Michael Maffei; removed him from the car, pat-searched him for weapons and put him in the police car; removed Ms Maffei from the car; and asked both Maffeis for consent to search the car. Haobsh Decl. ¶¶ 12-18. It was not until Officer Haobsh asked Mr Maffei for consent to search the car that he said "there was marijuana in the vehicle and that he had a cannabis card." Matthews Decl., Exh. A (Bates 544). Even then, Officer Haobsh did not follow up with any questions about the marijuana. Because Officer Haobsh did nothing during this time to investigate the smell of marijuana that the government claims as the basis for prolonging the stop, it has failed to justify the prolongation based on reasonable suspicion. *See United States v.*

---

[2] Neither his police report nor his declaration indicates whether the smell was of burnt or fresh marijuana. Matthews Decl., Exh. A (Bates 544) ("strong odor of marijuana"; "obvious smell of marijuana"); Haobsh Decl. ¶¶ 10, 16 ("strong odor of marijuana"; "strong smell of marijuana"); *cf., e.g.*, *United States v. Davila*, 2019 WL 1217288, at *2 (D. Nev. 2019) (unpublished) (officer testified that he smelled "burnt marijuana"); *United States v. Zamora*, 2017 WL 3186655, at *2 (D. Nev. 2017) (unpublished) (citing officer's testimony that he smelled "a strong, pungent odor of burned marijuana coming from the truck"). As discussed *post*, whether the smell indicated that the marijuana was burnt or fresh makes a difference for the reasonableness of the officer's investigatory steps.

REPLY IN SUPPORT OF MOTION TO SUPPRESS
*MAFFEI*, CR 18–00174 YGR

*Evans*, 122 F. Supp. 3d 1027, 1037-38 (D. Nev. 2015) (on remand, affirming suppression; "Even if Zirkle's scent of methamphetamine justified conducting an investigation related to whether Evans had drugs in the car, Evans' address and registration information simply was not relevant to any such investigation.").

Since *Rodriguez*, courts have closely examined the government's asserted reasons when considering whether it has carried its burden of justifying the prolongation of a traffic stop based on independent reasonable suspicion. *See, e.g.*, *Landeros*, 913 F.3d at 868-69 (rejecting government's argument that there was independent reasonable suspicion to investigate underage drinking, curfew violations and failure to provide identification and comply with police orders). It does not follow that prolonging a stop is justified merely because police claim to have smelled drugs. *See Evans*, 786 F.3d at 788-89 (remanding for district court to determine whether government's allegations, including "the odor of methamphetamine," established reasonable suspicion to prolong traffic stop). The government here has not carried its burden of establishing that Officer Haobsh was justified in prolonging the stop based on reasonable suspicion.

## II.     The Search of the Car Violated the Fourth Amendment

The warrantless search of the car was the fruit of the unlawful prolongation of the traffic stop. Even if the Court disagrees, however, it must suppress all fruits of the warrantless search of the car because the government has not carried its burden of establishing that the search fell within a recognized exception to the warrant requirement. *United States v. Job*, 871 F.3d 852, 862 (9th Cir. 2017).

### A.     The Automobile Exception Does Not Apply Here

To carry its burden under the automobile exception the government must show that police had probable cause at the time of the search to believe that the car contained evidence of a crime. *Id.* The probable cause required to search a car under the automobile exception is the same probable cause "that would justify the issuance of a warrant." *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (internal quotation marks omitted)). Given the undisputed facts and the law at the time of the search, the government has not carried its burden.

Officer Haobsh pulled over Mr Maffei for driving with a broken taillight and failing to yield to

pedestrians in crosswalk. Haobsh Decl. ¶¶ 6-7. He claims to have smelled "a strong odor of marijuana emanating from the open car window." *Id.*, ¶ 10. Although he claims experience "with the smell of marijuana, both burning and fresh," *id.* ¶ 3, neither his police report nor his declaration specifies whether the smell was burnt or fresh. *Cf. id.* at ¶¶ 10, 16, 19; Matthews Decl., Exh. A (Bates 544). Moreover, prior to the search Mr Maffei told Officer Haobsh that there was marijuana in the car *and* that he had a medical marijuana card. Haobsh Decl. ¶ 18. Other than asking both Maffeis for consent to search, which they both denied, Officer Haobsh asked no follow-up questions and did no further investigation before searching the car. *Id.* ¶¶ 18-19.

The government acknowledges that California has decriminalized the possession of less than 28.5 grams of marijuana. Gov't Opp. at 4 n.1. Notably, Officer Haobsh did not list any marijuana offense as a basis for the Maffeis' arrest. Matthews Decl., Exh. A (Bates 539). The only marijuana offense Officer Haobsh cited in his police report as a possible justification for searching the car was California Vehicle Code § 23222(b). Matthews Decl., Exh. A (Bates 544). To reprise, this statute does not apply if the marijuana is in the trunk or a closed container and the person has medical-marijuana authorization; a violation of this statute is an infraction punishable only by a fine of up to $100. Cal. Veh. Code § 23222.[3]

Nor has the government presented any evidence that Officer Haobsh had any training or experience to reliably detect, based on odor, "not only the presence and identity of a controlled substance, but also its weight." *Commonwealth v. Overmyer*, 11 N.E.3d 1054, 1059 (Mass. 2014). He described the odor as "strong," but "such characterizations of odors as strong or weak are inherently subjective; what one person believes to be a powerful scent may fail to register as potently

---

[3] Curiously (and contrary to his police report) Officer Haobsh cites in his declaration the offenses identified by the government in its opposition: "driving under the influence of marijuana, possession of more than 28.5 grams of marijuana, and possession of open containers of marijuana in a vehicle." Haobsh Decl. ¶ 16; Gov't Opp. at 12. The government has presented no evidence that Mr Maffei himself smelled like marijuana or showed physical signs of being under the influence. *Cf., e.g.*, *United States v. Washington*, 649 F. Supp. 2d 959, 961 (D. Alaska 2009) (noting that officer noticed marijuana smell coming from car and from driver, noticed driver had "bloodshot and watery" eyes and that his "'mental processes were very lethargic' and . . . his speech was incoherent"; he "smelled marijuana on Washington's breath.").

for another." *Id.* (citing Doty, Wudarski, Marshall, & Hastings, *Marijuana Odor Perception: Studies Modeled from Probable Cause Cases*, 28 Law & Hum. Behav. 223, 232 (20014)). "As a subjective and variable measure, the strength of a smell is thus at beast a dubious means for reliably detecting the presence of a criminal amount of marijuana." *Id.* "In the absence of reliability, a neutral magistrate would not issue a search warrant, and therefore a warrantless search is not justified based solely on the smell of marijuana, whether burnt or unburnt." *Id.* at 1059-60 (internal quotation marks omitted).

There is yet another problem with the government's argument: Mr Maffei's statement that he had a medical marijuana card further undermined any showing of probable cause. "[W]hen officers become aware that a suspect has a medical marijuana card, the officers must take that information into account when determining whether there is probable cause to conduct a warrantless search or arrest that individual." *United States v. Phillips*, 9 F. Supp. 3d 1130, 1138 (E.D. Cal. 2014); *see also United States v. Collins*, 2018 WL 306696, at *5 (N.D. Cal. 2018) (although not "dispositive," "possession of a cannabis card is part of the totality of the circumstances that the officer must assess in determining if there is probable cause"). Under these circumstances, the government has not carried its burden of establishing that Officer Haobsh had sufficient facts that would support issuance of a warrant so as to justify the warrantless search of the car under the automobile exception.

The cases cited by the government, Gov't Opp. at 12-13, do not change the result. First, the searches in all but one of these cases occurred before the change in California law that legalized the possession of up to 28.5 grams of non-medical marijuana effective November 9, 2016. Cal. Health & Safety Code § 11362.1(a) (making it legal to, *i.a.*, possess and transport up to 28.5 grams of cannabis and to smoke or ingest cannabis).[4] Post-2016 California law also provides that "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search or arrest." Cal. Health & Safety Code § 11362.1(c). Although *United*

---

[4] The government also cites one district court case from Nevada, in which the challenged search also occurred while "recreational marijuana remained illegal in Nevada." *United States v. Hylton*, 2017 WL 6521322, at *6 (D. Nev. 2017).

REPLY IN SUPPORT OF MOTION TO SUPPRESS
*MAFFEI*, CR 18–00174 YGR

*States v. Martinez*, 2018 WL 3861831, at **4-6 (N.D. Cal. 2018) (unpublished) was decided after California legalized marijuana, and acknowledged its decriminalization, the court nonetheless relied on cases that arose *before* decriminalization.[5] Unlike the Massachusetts high court's decision addressing warrantless car searches based on the smell of marijuana, *Martinez* did not consider whether prior cases authorizing such searches based on the smell of marijuana remained valid after decriminalization. *See Commonwealth v. Cruz*, 945 N.E.2d 899, 908-14 (Mass. 2011) (holding that smell of burnt marijuana does not support warrantless search of car); *Overmyer*, 11 N.E.3d at 1059-60 (holding that "strong" or "very strong" odor of unburned marijuana and "fat bag" of marijuana removed from glove compartment did not justify further search of car). As the Massachusetts court correctly concluded, when the law has decriminalized possession of up to an ounce of marijuana, the odor of marijuana alone "does not constitute probable cause to believe that a vehicle contains a criminal amount of contraband or specific evidence of a crime, such that the automobile exception to the warrant requirement may be invoked." *Overmyer*, 11 N.E.3d at 1058; *see also Cruz*, 945 N.E.2d at 913 ("[N]o facts were articulated to support probable cause to believe that a *criminal* amount of contraband was present in the car. We concluded therefore, that in this set of circumstances a magistrate would not, and could not, issue a search warrant" (emphasis in original)).

### B.   The Warrantless Search of the Car Was Not Justified As an Inventory Search

#### 1.   **The government's stated reasons fall short of the mark.**

California law allows (but does not require) police to tow a car "[i]f the peace officer issues the driver of a vehicle a notice to appear for a violation of," *i.a.*, California Vehicle Code section 14601.1 -- driving with a suspended license.  Cal. Veh. Code § 22651(p). The San Mateo Police Department towing policy does not provide for towing when a person has been cited (but not arrested) for driving on a suspended license. Haobsh Decl., Exh. A (listing grounds for removal and storage of vehicles). Even in circumstances when the police department's policy does provide for storage of a car, it also

---

[5] Moreover, in both *Collins* (another recent case from this district, but one in which the challenge search occurred before decriminalization) and *Martinez*, the specific question the district courts seemed to be addressing was whether the discovery of a small amount of marijuana in the car could give rise to "probable cause to continue searching for *additional* marijuana or other contraband."

REPLY IN SUPPORT OF MOTION TO SUPPRESS
*MAFFEI*, CR 18–00174 YGR

states that "consideration should be given to leaving a vehicle at the scene in lieu of storing . . . [w]henever the licensed owner of the vehicle is present, willing, and able to take control of any vehicle not involved in criminal activity." *Id.*

Neither probable cause to believe the driver has committed a traffic violation nor the mere fact that a tow complies with state law or police department policy is enough to justify the warrantless seizure of a car. *United States v. Cervantes*, 703 F.3d 1135, 1141-42. Rather, the government must show some community-caretaking reason for the seizure. *Id.* at 1142.

The government urges three bases for towing the car "even though [Ms Maffei] was the registered owner of the car" and had a valid driver's license: (1) the car was "parked in a private parking lot in a business district, outside of a parking stall, and blocking other parking stalls"; (2) Michael Maffei had been driving dangerously and with a suspended license; and (3) the broken rear taillight. Gov't Opp. at 15. None of these is a valid justification.

First, although Officer Haobsh says that the car initially "stopped at the entrance to the parking lot, perpendicular to parking stalls," Haobsh Decl.¶ 9, the car then moved forward approximately 25 feet, which Mr Maffei told the officer was because "he thought it would be safer to move into a parking stall." *Id.* ¶ 11. Officer Haobsh does not state that the car was parked "outside of a parking stall" or "blocking other parking stalls," as the government claims. Haobsh Decl. ¶ 16 (justifying search based on smell of marijuana and Michael Maffei's dangerous driving and suspended license).

Second, the professed concern that Ms Maffei might allow Michael Maffei to drive with a suspended license is rank speculation and legally unsupported. The Ninth Circuit has questioned whether "impounding an unlicensed driver's car to prevent its continued unlawful operation" is a valid community caretaking function to authorize impoundment. *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008). In circumstances similar to those in this case, it reversed the grant of summary judgment to the police where the plaintiffs had challenged the impoundment of their car, parked in their driveway, because the police had seen "the husband teaching his unlicensed wife how to drive." *Miranda v. City of Cornelius*, 429 F.3d 858, 860 (9th Cir. 2005). *Id.* at 860. "[T]he purpose of the community caretaking function is to remove vehicles that are *presently* impeding traffic or creating a hazard. The need to deter a driver's unlawful conduct is by itself *insufficient to justify a*

REPLY IN SUPPORT OF MOTION TO SUPPRESS
*MAFFEI*, CR 18–00174 YGR

8

*tow* under the 'caretaker' rationale." *Id.* at 866 (emphases added). "Even if an inventory search technically complies with the applicable policy, the Ninth Circuit has suggested that law enforcement officers should 'sufficiently consider alternatives before impounding' a vehicle under the community caretaking doctrine." *United States v. Turnbow*, 2019 WL 654456, at *5 (D. Nev. 2019) (unpublished) (quoting *United States v. Maddox*, 614 F.3d 1046, 1050 (9th Cir. 2010)).

The government's final argument – regarding the broken taillight – fares no better. Neither the California statute authorizing police to remove cars under specified circumstances, Cal. Veh. Code § 22651, nor the San Mateo Police Department tow policy authorizes police to search and tow a car because of a broken taillight. *United States v. Cartwright*, 630 F.3d 610 (7th Cir. 2010), cited by the government cites is distinguishable. The court there upheld the tow as authorized under police department policy because the driver was arrested and the passenger, who owned the car, did not have a driver's license. The passenger/owner could not identify any specific person who could realistically move the car. *Id.* at 615. Although the court also noted that no one legally could have driven the car because it had a broken taillight in violation of Indiana law, that was not the basis for the tow. *Id.* at 616.

True, Cal. Veh. Code § 25950(b) does prescribe the color of car lights. But the government cites no authority permitting an inventory search and tow based solely on a non-compliant taillight. To the contrary, driving with a broken taillight is the example given on the California courts' website of a "'correctable violation' or a 'fix-it-ticket." *See* California Courts, *Correctable Violations ("Fix-It" Tickets)*, https://www.courts.ca.gov/9529.htm. "If you show proof of correction and pay a dismissal fee, the court will dismiss the relevant charge." *Id.* There is no indication that Officer Haobsh gave either of the Maffeis so much as a ticket for the broken taillight. Indeed, Officer Haobsh released the car to Ms Maffei without any apparent limitations on her being able to drive it. Matthews Decl., Exh. A (Bates 550).

### 2. The search was an impermissible, pretextual search for drugs.

"[T]he inventory search exception to the warrant requirement is subject to an important limiting principle -- it cannot be used as a pretextual cover to conduct warrantless searches for evidence of criminal activity." *United States v. Turnbow*, 2019 WL 654456, at *5 (D. Nev. 2019) (unpublished).

1   "Said otherwise, to be a valid inventory search, 'the purpose of the search must be non-investigative;
2   it must be conducted on the basis of something other than suspicion of evidence of criminal
3   activity.'" *Id.* (quoting *United States v. Johnson*, 889 F.3d 1120, 1125 (9th Cir. 2018)). Contrary to
4   the government's disavowal of Officer Haobsh's stated reason for searching the car (Gov't Opp. at 10
5   n.4, "the officer's subjective intent is relevant." *Turnbow*, 2019 WL 654456, at *5.
6         In *Turnbow*, a police officer conducted a traffic stop after a vehicle license plate check showed
7   that the driver had an outstanding misdemeanor arrest warrant. During questioning, the officer
8   learned that neither occupant of the car had a valid driver's license or was able to produce proof of
9   valid insurance. *Id.*, at **1-2.  The officer arrested the driver and called for a back-up unit. *Id.*, at *2.
10  Before the search, the police called a K-9 unit "to establish probable cause for a search that would
11  allow him to more thoroughly search the Car than would be permissible pursuant to an inventory
12  search." *Id.*
13        During an evidentiary hearing on the driver's motion to suppress evidence, the police testified
14  that they decided to impound the car because they had arrested the driver and the passenger did not
15  have a valid license. *Id.* The district court concluded that both calling the K-9 unit and "ask[ing] for
16  consent to search [the passenger's] purse" were not typical of an inventory search and instead
17  indicated a search for incriminating evidence. *Id.*, at *6. Based on police testimony, the district court
18  concluded that the police officer originally intended to search the car for drugs and "only fell back on
19  the inventory search exception to the warrant requirement once it became clear that his first choice –
20  probable cause based on a dog sniff – was not available to him." *Id.*, at *6. Although the police report
21  included details suggesting reasonable suspicion or probable cause for drug activity, it omitted "any
22  discussion of his purported community caretaking motivations for the inventory search, such as
23  concerns about vandalism, or that the car was not in a valid parking spot." *Id.*, at *6.
24        In granting the motion to suppress, the district court observed that the inventory search policy
25  gave the police officer discretion to release the car. *Id.*, at *6. For example, the officer could have left
26  the car in the custody of the passenger, who was the owner, even though she did not have a valid
27  driver's license, "and she could have arranged for a tow truck or a friend to transport it back to her
28  house. At the very least, he could have asked her if she wanted that option." *Id.*, at *6. Leaving the

car with the passenger also would have relieved the police of responsibility for it. The officer's failure to consider reasonable alternatives to impounding the car weighed in favor of the Court finding that his true motivation was to search the car for drugs without a warrant." *Id.*, at *6.

The facts here are very similar and suggest an unlawful, pretextual purpose for the warrantless car search. Officer Haobsh's police report and declaration make clear that he wanted to search the car for marijuana. Matthews Decl., Exh. A (Bates 544); Haobsh Decl. ¶¶ 16, 19. As discussed above, there was no valid basis for towing the car under California law or police department policy. Akin to the dog sniff in *Turnbow*, Officer Haobsh asked both Maffeis for consent to search the car. Haobsh Decl. ¶ 18. He started the purported inventory search only after they denied consent. *Id.* ¶¶ 18-19. As in *Turnbow*, Officer Haobsh's police report and declaration contain no "discussion of his purported community caretaking motivations for the inventory search, such as concern about vandalism, or that the car was not in a valid parking spot." 2019 WL 654456, at *6. Similarly, Officer Haobsh had "discretion to deal with the car -- other than by impounding it -- that he did not exercise," such as allowing Ms Maffei to take custody of the car, or at least "ask[ing] her if she wanted that option." *Id.*

### III.   The Inevitable Discovery Doctrine Does Not Apply Here

The government claims that the police inevitably would have towed and searched the car. Gov't Opp. at 16-17. The foregoing discussion refutes this claim. Neither Cal. Veh. Code § 22651 ("circumstances permitting removal") nor the applicable SMPD towing policy, Haobsh Decl., Exh. A, provides for towing based on a broken taillight. Nor has the government cited any authority that would allow the police to impound a car based solely on a broken taillight, or offered any evidence that at the time of the search the car was "blocking other parking spots." The government thus has not carried its burden of establishing "demonstrated historical facts capable of ready verification or impeachment" to show that the evidence in the car inevitably would have been discovered. *Nix v. Williams*, 467 U.S. 431 444, n.5 (1984); *see¸ e.g.*, *United States v. Bradford*, ___ Fed. Appx. ___, 2019 WL 2564082, at *1 (9th Cir. June 21, 2019) (unpublished) reversing denial of motion to suppress because district court "erred in relieving the government of its burden to demonstrate" facts establishing that gun would have been discovered").

The Court also should reject the government's cursory argument that suppression is not

warranted because there was no "deliberate, reckless, or grossly negligent conduct" by the police. Gov't Opp. at 17. The two cases the government cites are distinguishable: While the police in *Herring v. United States*, 555 U.S. 135 (2009), reasonably relied in good faith on another law enforcement officer's negligence, the Ninth Circuit notes that "[t]he Supreme Court has never applied the good faith exception to excuse an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights," as in this case. *United States v. Camou*, 777 F.3d 932, 945 (9th Cir. 2014). And in *Utah v. Strieff*, 136 S. Ct. 2056, 2059 (2016), the Supreme Court declined to suppress where the officer's "discovery of [an] arrest warrant attenuated the connection between the unlawful stop and the evidence seized incident to arrest." The government has not established any such attenuating factor here.

## IV.     The Search of the Maffei's Home Was the Fruit of the Fourth Amendment Violations

The government argues that the warrant search of the Maffeis' home was valid even if the Court concludes that the search of the car violated the Fourth Amendment because (1) the search warrant affidavit would establish probable cause to search "even if the Court were to excise the portion of the search warrant containing reference to what was recovered from the Camry"; (2) Ms Maffei's consent to the search of her home, after she knowingly and voluntarily waived her *Miranda* rights, "constitute[d an] intervening circumstance[] that would purge any potential taint from the vehicle search"; and (3) the police reasonably relied in good faith on the warrant. Gov't Opp. at 18. The government has not carried its burden of establishing that any of these reasons applies.

### A.     The Government Has Not Carried Its Burden of Establishing That the Warrant Would Have Been Based On Probable Cause Absent The Search of the Car

"The exclusionary rule applies both to direct products of an illegal search – i.e., the physical evidence found during the search itself -- and to indirect products of the illegal search – i.e., statements or physical evidence subsequently obtained in part as a result of the search – if they bear a sufficiently close relationship to the underlying illegality." *United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011) (internal quotation marks omitted). The government bears the burden of showing that evidence following an illegal search was not "the product of the illegal search" or, if it was, that it was "nevertheless so attenuated from the search that suppression was not warranted." *Id.*

"It is now fundamental that evidence which is obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search." *United States v. Wanless*, 882 F.2d 1459, 1465 (9th Cir. 1989). Specifically, evidence seized during an illegal warrantless search is "tainted and should not [be] included in the affidavit for a search warrant." *United States v. Vasey*, 834 F.2d 782, 289 (9th Cir. 1987). A search warrant based on tainted evidence "remains valid if, after excising the tainted evidence, the affidavit's remaining untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014).

The warrant here was based on "The crimes of:  HS 11351 Possession of Controlled Substance for Sales (Oxycodone)." Declaration of Special Agency Chris Collins ("Collins Decl."), Exh. A (Bates 563).  As the affidavit notes, this is the offense for which Office Haobsh arrested the Maffeis after the search of their car. *Id.* (Bates 567).  The entire probable cause statement in the affidavit was based on: evidence "Officer Haobsh found inside the vehicle"; the officer's "welfare check of the children" because "there was no adult to care for the children if they went to jail for the night"; what the officers saw during a "protective sweep around the apartment" when they were checking on the children; what the children told the officers; the interviews of Michael and Martha; and the recordings of Michael and Martha "placed in the patrol vehicle while both suspects were waiting to be transported to the SMPD Station for further questioning." *Id.* (Bates 565-68). The affiant "assist[ed] Office Haobsh" with the writing of the search warrant. *Id.* (Bates 565).

The government here takes too cramped a view of what evidence was tainted by the illegal search of the Maffei's car. It seeks to save the warrant by excising only the parts of the affidavit that refer directly to the car search. Gov't Opp. at 18. However, it has done nothing to carry its burden of establishing that the "observations inside of the apartment" and "conversations with Defendant's children," *id.*, were not also the fruits of the unlawful search of the car. *See Nora*, 765 F.3d at 1057 (government failed to carry its burden of proving that defendant's confession was not fruit of prior illegal search). Obviously, neither the affiant's "training and experience" nor the "opinions formed based on that training and experience," Gov't Opp. at 18, can establish probable cause to search without an underlying factual basis tying these opinion to the Maffeis' home. *See, e.g.*, *United States*

*v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (conclusions of affiant unsupported by underlying facts cannot be used to establish probable cause).

### B. The Government Has Not Carried Its Burden of Establishing That Ms Maffei Knowingly and Voluntarily Consented To the Search of Her Home

As it appears to acknowledge, the government bears the burden of establishing that Ms Maffei's consent to search her home was voluntary. Gov't Opp. at 18. Specifically, it must establish both that Ms Maffei's consent was voluntary and that it was sufficiently attenuated to purge the taint of the unlawful search and arrest. *United States v. Wellins*, 654 F.2d 550, 553 (9th Cir. 1981). The government claims that, although "post-*Miranda* consent alone may not be sufficient to attenuate the search warrant, under the totality of the circumstances, these multiple intervening factors attenuate the causal relationship between any potentially unreasonable vehicle search, and the execution of the valid search warrant at Defendant's home." Gov't Opp. at 18-19. The government has not established either voluntary consent or consent free of the taint from the illegal prolonged detention and car search.

Immediately preceding Ms Maffei's consent to search her house, she had been stopped, ordered to provide her driver's license, removed from her car, asked for consent to search her car, had her car searched despite her denying consent, and been arrested based on what the police found in the car. Haobsh Decl. ¶¶ 8-22. She was advised of her rights, put in a police car, and questioned. Matthews Decl., Exh. A (Bates 545). The officer told her they "would need to find a guardian for her children while she was in police custody." *Id.* She told the officer that she "was worried about her children." *Id.* It was during this discussion about the need to find someone to take care of her children while she was in jail that Ms Maffei consented to the search of her home. *Id.*

The government has pointed to nothing attenuating the taint from the illegal detention of Ms Maffei or the illegal search of her car. Everything followed in sequence, in the same location, with the same officer. Given the timing and content of the police actions, the government has not carried its burden of establishing either that Ms Maffei's consent to search her home was voluntary or that it was attenuated from the unlawful police conduct that preceded it.

### C. The *Leon* Good-Faith Exception Does Not Apply

An officer's "warrantless search of [a] vehicle which violated [a defendant's] Fourth Amendment rights precludes any reliance on the good faith exception." *Vasey*, 834 F.2d at 789. An officer "conducting an illegal warrantless search and including evidence found in this search in an affidavit in support of a warrant is an activity that the exclusionary rule was meant to deter." *Id.* A magistrate's consideration of that evidence in a warrant affidavit and issuance of a warrant based on that evidence "does not sanitize the taint of the illegal warrantless search." *Id.* For these reasons, the *Leon* exception does not render legal the search of the Maffeis' residence.

### CONCLUSION

For the reasons stated, Martha Maffei respectfully asks the Court to suppress all fruits of the unlawfully prolonged seizure of her person and the unlawful, warrantless search of her car.

Dated: July 3, 2019

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

　　　　　　　/S　　　　　　　
JEROME MATTHEWS
Assistant Federal Public Defender