**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 18-cr-00174-YGR-1 |
| Plaintiff**,** | |
| vs. | **ORDER GRANTING MOTION TO SUPPRESS EVIDENCE** |
| **MARTHA JULIA MAFFEI,** | Re: Dkt. No. 44 |
| Defendant**.** | |

Defendant has been charged in a twenty-seven count indictment related to an alleged scheme to defraud, including charges of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, laundering in monetary instruments in violation of 18 U.S.C. § 1956, and engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957.[1]  (Dkt. No. 9 ("Indictment").)  The Court considers defendant's second motion to suppress evidence.  Therein, defendant argues that the San Mateo Police Department ("SMPD") violated her Fourth Amendment rights by unreasonably seizing her for the duration of an unduly prolonged traffic stop and conducting a warrantless search of her car, in which she was a passenger.  Based thereupon, defendant asks the Court to suppress all fruits of the vehicle search, including evidence recovered from the search of defendant's home pursuant to a search warrant obtained following the search of her vehicle.

---

[1]  Defendant's conduct also subjects her to criminal forfeiture upon conviction of violation of 18 U.S.C. §§ 1956, 1957 pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a) and 28 U.S.C. § 246(c). (Indictment ¶¶ 32-35.)

Having carefully considered the motion and the papers submitted,[2] as well as oral argument from counsel on July 12, 2019, and for the reasons set forth more fully below, the Court **GRANTS** defendant's motion to suppress and excludes from evidence all fruits of the vehicle search, including evidence recovered from the search of defendant's home pursuant to a search warrant obtained following the search of her vehicle.

## I.  BACKGROUND[3]

On Sunday, November 5, 2017[4] at approximately 5:19 pm, SMPD Officer Haobsh pulled over a Toyota Camry (the "Vehicle") after observing a broken tail light and the driver's failure to yield to pedestrians.[5]  The driver, defendant's husband, pulled into a Walgreens parking lot, stopped, and "abruptly move[d] his car forward another 25 feet."  The driver later explained that he believed it "safer to move into a parking stall."  Officer Haobsh does not dispute the driver's assessment.  When Officer Haobsh approached the open driver-side window, he found defendant's husband, Michael Maffei, in the driver seat and defendant, Martha Maffei, in the passenger seat.

---

[2]  Motion to Suppress, (Dkt. No. 44 ("MTS")); Opposition, (Dkt. No. 46 ("Opp.")); Reply, (Dkt. No. 47 ("Reply")); Supplemental Memorandum by Government, (Dkt. No. 51 ("Gov't Suppl.")); Supplemental Memorandum by Defendant, (Dkt No. 52 ("Def. Suppl.")).

[3]  The background facts are taken from Officer Haobsh's police report and declaration. (*See* Dkt. No. 44-1, Ex. A ("Report") at 543-46; Dkt. No. 46-1 ("Haobsh Decl.") ¶¶ 11, 12, 15.) The section further draws on the affidavit filed in support of the warrant application.  (Dkt. No. 44-1, Ex. B ("Warrant App.") at MJM-00566-67.)

[4]  At some point prior to November 2017, the Department of Labor, Office of the Inspector General ("OIG") opened an investigation into defendant Martha Maffei's involvement in an alleged scheme to defraud timeshare owners by posing as either a timeshare broker representing potential buyers or a Special Agent of the OIG or the Treasury Department and encouraging victims to make various payments via check or money wire.  (Indictment ¶¶ 10-12.)  The events which are the subject of this motion occurred during the course of the OIG's investigation.

[5]  Specifically, Officer Haobsh reports that the tail light emitted a white light rather than a red light when braking in violation of California Vehicle Code Section 25950 and that failing to yield to pedestrians' right-of-way in the crosswalk violates California Vehicle Code Section 21950.  (Report at MJM-00543.)  According to the police report, Mr. Maffei was turning left onto Second Avenue at the same time as pedestrians were crossing Second Avenue.  (*Id.*)  Mr. Maffei failed to yield, requiring the pedestrians to stop in the middle of the street to avoid being hit as the car passed. (*Id.*)

Officer Haobsh subsequently indicated that "while speaking with them" he smelled a strong odor of marijuana "emanating from the open car window." Officer Haobsh asked Mr. Maffei for his driver's license, registration, and proof of insurance. Mr. Maffei complied with the officer's request for his driver's license and indicated that defendant Martha Maffei was the owner of the Vehicle. Officer Haobsh then asked defendant for her own driver's license as well. Defendant provided all to the officer.

Officer Haobsh returned to his patrol car and conducted a DMV record scan of both licenses, which indicated that Mr. Maffei's license was suspended.[6] Officer Haobsh began to complete a traffic citation but stopped to call for backup and conduct a search of the Vehicle. In response to the request for backup, two officers arrived approximately nine minutes after the initial stop. Once the additional officers arrived, Officer Haobsh approached the Vehicle again and told Mr. Maffei that his license was suspended, to which Mr. Maffei replied that he thought he had already fixed the issue.[7] The record scan apparently did not show any violations or holds for defendant Martha Maffei.

Officer Haobsh then ordered Mr. Maffei to exit the Vehicle, "[d]ue to the obvious smell of marijuana coming from the [V]ehicle and a required tow inventory in accordance with [California Vehicle Code Section] 22651(p)[.]"[8] It is not clear from the record whether Officer Haobsh *told*

---

[6] The DMV record scan indicated that Mr. Maffei had been driving with three active suspensions on his license, in violation of California Vehicle Code Section 1601.1(a). (Report at MJM-00544.) The first violation of driving with a suspended license amounts to a misdemeanor, punishable by up to six months in jail and/or a fine between $300.00 and $1,000.00. Cal. Veh. Code §§ 14601.1(a), (b)(1)). Moreover, California Vehicle Code Section 22651(p) allows impoundment of a vehicle in violation of § 14601.1.

[7] The government also notes that in Officer Haobsh's experience the practice of the Department of Motor Vehicles is to clear suspensions on the same day tickets are paid, and that Mr. Maffei could not provide proof that he had cleared the suspensions. (Haobsh Decl. ¶ 15.)

[8] California Vehicle Code Section 22651(p) provides that police "may remove a vehicle" "[i]f the peace officer issues the driver of a vehicle a notice to appear for [driving on a suspended or revoked license], and the vehicle is not impounded [because it was used in commission of a crime.] A vehicle so removed from the highway or public land, or from private property after having been on a highway or public land, shall not be released to the registered owner or his or her agent, except upon presentation of the registered owner's or his or her agent's currently valid driver's license to operate the vehicle and proof of current vehicle registration to the impounding

Mr. Maffei or defendant that he smelled marijuana and needed to conduct a search at this point. Once Mr. Maffei exited the Vehicle, Officer Haobsh pat-searched him for weapons and instructed him to remain in the back seat of one of the police patrol cars present. Officer Haobsh then instructed defendant Martha Maffei to exit the Vehicle, visually inspected her for weapons, and directed her sit on the curb.[9] Officer Haobsh requested a tow for the Vehicle.

Officer Haobsh next asked both defendant and Mr. Maffei for consent to search the Vehicle. Both declined, but Mr. Maffei responded that there was marijuana in the car and that he had a cannabis card. The government contends that at this point, Officer Haobsh had probable cause to believe that the Vehicle contained contraband or evidence of the following crimes: (i) driving under the influence of marijuana, (ii) possession of more than 28.5 grams of marijuana,[10] and (iii) possession of open containers of marijuana in a vehicle. The government further contends that "because the rear tail light was broken and thus the car could not be driven legally, it was parked in a private parking lot, and [Mr.] Maffei had been driving dangerously on a suspended license, Officer Haobsh believed that the car would be towed pursuant to California Vehicle Code Section 22651(p)" and inventoried before removal. (Opp. at 4.)

Officer Haobsh then conducted a search of the Vehicle. Initially, Officer Haobsh found a toiletry bag which contained 48 blue pills that appeared to be Oxycodone Hydrochloride, a Schedule II controlled substance. The toiletry bag did not contain any prescription bottles or labels, but it did contain a bag of what Officer Haobsh believed to be marijuana (later identified as 4.3 grams of marijuana). Officer Haobsh asked Mr. Maffei if the toiletry bag belonged to him, and he initially stated yes, but then changed his position and claimed that only the marijuana

_____

law enforcement agency, or upon order of a court." Cal. Veh. Code §22651(p).

[9] Specifically, Officer Haobsh offered defendant the option to sit in the patrol car after she mentioned that she was "still healing from an illness and was cold," but she opted to sit on the curb instead. (Report at MJM-00544.)

[10] Although possession of less than 28.5 grams of marijuana has been decriminalized in California, possession of more than that amount remains a misdemeanor, punishable by up to six months in jail and/or a $500 fine. *See* Cal. Health & Safety Code § 11357(b)(2).

belonged to him.  Based thereon, the government contends that at this point Officer Haobsh had probable cause to believe that further evidence of transport/sale of controlled substances and possession of more than 28.5 grams of marijuana would be found within the Vehicle and so continued to search.

Next, Officer Haobsh found $11,000 in $100 bills inside a brown zipper pouch inside a black pursue on the front floorboard, as well as an iPhone and an additional $971 from a wallet inside the purse.  When Officer Haobsh looked underneath the front passenger seat, he found several flat rate United States Postal Service envelopes addressed to defendant from different people across the United States, as well as financial documents indicating large deposits to a bank account in Nicaragua.  According to the government, based on these findings, Officer Haobsh believed that the money, mailings, and large deposits were connected to the trafficking of Oxycodone pills, and continued to searched car, finding additional envelopes, financial statements, and evidence of the receipt and deposit of high-value checks from people across the United States.

Officer Haobsh then arrested defendant and Mr. Maffei for "narcotics related crimes."[11] Officer Haobsh advised defendant of her Miranda rights.  Defendant stated that she was worried about her children and consented to officers entering the home.  Officer Haobsh advised defendant that she would need to find a guardian for her children while she was in police custody. Defendant then provided consent to searching her home for any additional illegal narcotics.

SMPD officers went to defendant's home and entered it without a warrant but with defendant's consent.  Upon entering the home, in plain view on top of a dresser in a bedroom, SMPD Officer Bardina found pills similar to those recovered from the toiletry bag in defendant's car, some of which were in a Ziplock bag, and some of which were in a prescription bottle with a label that described the contents as "Oxycodone 30 mg" in the name of a patient other than defendant or her husband.  According to the government, the officers then "froze" the apartment

---

[11] Specifically, defendant and her husband were arrested for the felony of Transport/Sale of Controlled Substances in violation of California Health & Safety Code Section 11352(a), and Mr. Maffei was also arrested for driving with a suspended license, in violation of California Vehicle Code Section 14601.1(a).   (Haobsh Decl. ¶ 22.)

and applied for a warrant to search the premises.

The officers subsequently obtained a warrant to search the home. In applying for the warrant, the SMPD recounted the traffic stop, the search of the Vehicle, the items found therein, the consent by defendant to do a welfare check on her minor children, and the items found in plain view at the defendant's home. A court issued the search warrant and on November 6, 2017, the SMPD conducted a search of defendant's home and obtained additional evidence.

## II.  LEGAL FRAMEWORK

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A search is presumed unreasonable under the Fourth Amendment, "subject only to a few specifically established and well-delineated exceptions." *United States v. Caseres*, 533 F.3d 1064, 1070 (9th Cir. 2008) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)). Automobiles may be searched without a warrant, due to their inherent mobility, so long as the search is supported by probable cause or some other Fourth Amendment exception applies. *Id.* Additionally, an inventory search is a well-recognized exception to the warrant requirement and considered reasonable under the Fourth Amendment. *See South Dakota v. Opperman,* 428 U.S. 364, 376 (1976).

## III.  ANALYSIS

### A. Permissibility of the Seizure

For the duration of a traffic stop, an officer "seizes" everyone inside the vehicle within the meaning of the Fourth Amendment. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *see also Whren v. United States*, 517 U.S. 806, 810 (1996) (holding that even a brief detention of a driver inside a vehicle, for a limited purpose, constitutes a "seizure of persons" within the meaning of the Fourth Amendment); *Brendlin v. California*, 551 U.S. 249, 254 (2007) (holding that when, through an intentional "show of authority," a police officer restrains a person's freedom of movement, that person is seized by the police and entitled to challenge the government's action under the Fourth Amendment).

Here, defendant was seized within the meaning of the Fourth Amendment when SMPD officers stopped the Vehicle in which she was a passenger. *See Johnson*, 555 U.S. at 327. That seizure continued through the duration of the stop, including when the officers restricted her movement, ordered her out of the car and instructed her to sit, either on the curb or in the back of a patrol car. *See Brendlin*, 551 U.S. at 254. Thus, the government bears the burden of establishing that the warrantless seizure did not violate the Fourth Amendment.

Under *Whren*, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." 517 U.S. at 810. Here, the officer had probable cause to stop the Vehicle upon witnessing the driver violate California Vehicle Code Section 25950 by operating the Vehicle with a broken tail light as well as California Vehicle Code Section 21950 by failing to yield to pedestrians' right-of-way in the crosswalk. Therefore, the initial traffic stop was reasonable and a permissible seizure under the Fourth Amendment.

Defendant does not contest this conclusion, but focuses instead on the prolongation of the stop. The tolerable duration of a routine traffic stop "is determined by the seizure's 'mission,' which is to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 135 S.Ct. 1609, 1611 (2015) (internal citations omitted). A traffic stop "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission." *Id.* "[A]n officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion," which "exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015) (citing *United States v. Montero–Camargo*, 208 F.3d 1122, 1129 (9th Cir.2000)) (emphasis in original).

In the instant motion, defendant contends that officers unreasonably prolonged her seizure on two grounds: First, by requesting her driver's license. Defendant also asserts that, even if her status as the car's registered owner justified the officer's request for her identification, the subsequent records check and removal were outside of the scope of the police officer's traffic stop mission. Next, defendant argues unreasonable prolongation by calling and waiting for backup

United States District Court
Northern District of California

officers, removing and pat-searching the driver, and removing defendant from the vehicle and

visually inspecting her for weapons. The Court addresses each argument.

### 1. The Request for Defendant's License & Subsequent Records Check

Neither the Supreme Court or the Ninth Circuit have addressed whether requesting a

passenger-*owner's* driver's license is part of a traffic stop's mission. The Ninth Circuit has found

that "[a] demand for a passenger's identification is not part of the mission of a traffic stop."

*United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019) (holding that an officer could not

*prolong a traffic stop for several minutes* by repeatedly demanding that the front-seat passenger

provide him with identification absent reasonable suspicion that passenger was guilty of some

criminal misconduct).

The Court agrees with the government that because the *request* for defendant's license

occurred contemporaneously with that for the insurance and other registration information and did

not result in any back-and-forth between defendant and the officer, the request did not materially

prolong the stop.[12]  *C.f. Landeros*, 913 F.3d at 868 (holding that an officer could not *prolong a*

*traffic stop for several minutes*).  However, the same cannot be said for the subsequent records

check conducted by Officer Haobsh.[13]  Accordingly, the check "was permissible only if it was (1)

part of the stop's 'mission' or (2) supported by independent reasonable suspicion." *Landeros*, 913

F.3d at 868.

"When stopping an individual for a minor traffic violation, 'an officer's mission includes

ordinary inquiries incident to [the traffic] stop.'"  *Evans*, 786 F.3d at 786 (quoting *Rodriguez*, 135

S.Ct. at 1615) (alteration in original).  These involve "checking *the driver's* license, determining

---

[12]  Defendant concedes as much in her reply.  (*See* Reply at 1 ("The government suggests that Officer Haobsh did not prolong the stop by asking Ms. Maffei for her license because she complied with the officer's request . . . .  But it does not address the time it took for the officer to check her license").

[13]  The Court notes that although the police report does not indicate whether Officer Haobsh conducted a record check for defendant, as well as Mr. Maffei, the officer's declaration filed in support of the government's opposition confirms that Officer Haobsh "conducted a record check for both Michael and Martha Maffei."  (*Compare* Haobsh Decl. ¶ 13 *with* Report at MJM-00544; *see also* Opp. at 3.)

8

whether there are outstanding warrants *against the driver*, and inspecting the automobile's

registration and proof of insurance" and each shares "the same objective as enforcement of the

traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*,

S.Ct. at 1615 (emphasis supplied); *see also United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir.

2007) (holding that motorists' general expectations in a traffic stop include a records check).[14] A

records check of a passenger, even if she is also the owner of the vehicle, will ordinarily have no

relation to the safe operation of that vehicle.[15] *See Landeros*, 913 F.3d at 868; *see also Evans*, 786

F.3d at 786 ("The ex-felon registration check, *unlike the vehicle records or warrants checks*, was

wholly unrelated to [the] 'mission' of 'ensuring that vehicles on the road are operated safely and

responsibly.'") (emphasis supplied).

      The government argues that Officer Haobsh's actions were relevant to the mission of the

stop because as the owner, defendant would be the individual ultimately responsible for repairing

the broken tail light.[16] The government's theory is not supported by any legal authorities.

Moreover, whether the owner of a vehicle, who is not currently driving that vehicle, has a criminal

record is not relevant to its safe and responsible operation, even where that operation has been

---

[14] Based on these precedents, the records check as to Mr. Maffei, as the driver, was related to the mission of the traffic stop and therefore permissible. Defendant does not contest this conclusion. (*See* Reply at 2.)

[15] The Court notes that Officer Haobsh does not claim that he ran a check on defendant's license because he intended to release the Vehicle to her. Rather, Officer Haobsh's report indicates that at the time he conducted the records check and began to write a traffic citation for Mr. Maffei for driving with a suspended license, he paused to request "an additional police unit to assist [him] with removing the vehicle's occupants and searching the vehicle." (Report at MJM-00544.) He further provides in his declaration that "[a]fter learning that the driver's license was suspended, [he] asked over the radio for additional police officers to respond to assist [him] with the traffic stop" suggesting he had decided not to return the Vehicle to defendant at the time her conducted the records check on her license. (*See* Haobsh Decl. ¶ 14; Report at MJM-00544.)

[16] The Court notes that the government's opposition does not specifically address whether the records check that the officer conducted after asking defendant for her license falls within the mission of the traffic stop, and instead focuses only on the officer's "asking for" defendant's license. In the interest of judicial efficiency, the Court addresses these arguments as applied to the subsequent records check.

compromised by the condition of the vehicle.[17]  *See Landeros*, 913 F.3d at 868 ("The identity of a passenger, however, will ordinarily have no relation to a driver's safe operation of a vehicle.") Accordingly, the Court finds that Officer Haobsh unreasonably prolonged the otherwise reasonable seizure of the Vehicle by conducting a record check of defendant.

>    2.  The Call and Wait for Backup, the Removal from the Vehicle of Defendant and Mr. Maffei, and the Search of the Vehicle

The Court next considers whether any delay caused by the officer's conduct in calling and waiting for backup, removing defendant and Mr. Maffei from the vehicle,[18] and searching the Vehicle constituted an unreasonable prolongation in violation of the Fourth Amendment.  To resolve this issue, the Court must consider the circumstances, viewed objectively, to determine if the officer was justified in searching the Vehicle.  *See Rodriguez*, 135 S. Ct. 1615 (holding that an officer may not prolong a stop "absent the reasonable suspicion ordinarily demanded to justify detaining an individual"); *see also United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012) ("[T]he Supreme Court has unequivocally disallowed reliance on the good faith or subjective beliefs of officers as part of the analysis of whether they violated the Fourth Amendment.").  The Court addresses the issue using that framework, as set forth below.

**B.  Permissibility of the Search**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. "A warrantless search is unconstitutional unless the government demonstrates that it falls within

---

[17]  The government has not provided a basis for finding that running a record check on defendant was required in order to ensure the officer's safety.  *See Rodriguez*, 135 S.Ct. at 1616 (recognizing that "an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely").  Nor does the government assert that Officer Haobsh's conducting a record check of defendant was supported by reasonable suspicion.  (*See* Opp. at 8-10.)

[18]  *See also Maryland v. Wilson*, 519 U.S. 408, 415 (1997) (holding that "an officer making a traffic stop may order passengers outside of the car pending completion of the stop"); *Brendlin*, 551 U.S. at 258 (holding that an officer can order passengers out of the car "without reasonable suspicion that the passenger poses a safety risk").

certain established and well-defined exceptions to the warrant clause." *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009) (internal quotation marks and brackets omitted). The government bears the burden of persuading the Court that a warrantless search does not violate the Fourth Amendment. *Id.* at 415. Here, the government asserts that the warrantless search of the Vehicle falls within two established exceptions to the warrant clause: (1) the automobile exception; and (2) the inventory search exception. The Court addresses each.

### 1. The Automobile Exception

A warrantless search of an automobile is reasonable under the Fourth Amendment if officers have "probable cause to believe that the vehicle contains contraband" such that the "facts . . . would justify the issuance of a warrant, even though a warrant has not actually been obtained." *United States v. Ross*, 456 U.S. 798, 808-809 (1982); *see also United States v. Williams*, 846 F.3d 303, 312 (9th Cir. 2016) ("Officers may conduct a warrantless search of an automobile, including containers within it, when they have probable cause to believe that the vehicle contains contraband or evidence of criminal activity."). Ninth Circuit precedent indicates that the smell of marijuana alone is sufficient to provide probable cause to search a vehicle for contraband. *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973); *see also United States v. Johnson*, 224 F.Supp.3d 881, 885 (N.D. Cal. 2016) (holding that probable cause for arrest for marijuana-related crimes and for search of the defendant's vehicle existed where the officer observed the odor of marijuana). Additionally, no separate exigency is needed to invoke the automobile exception, so long as the vehicle is considered readily mobile. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999); *see also United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012) (finding that because cars are inherently mobile and attended by a "relatively minimal expectation of privacy," the applicability of this exception "does not turn on whether the car's owner or driver has already been taken into custody or the risk of mobility has otherwise been eliminated").

The controversy here arises due to a change in California law regarding the legality of marijuana. The government asserts that Officer Haobsh had probable cause to believe that the Vehicle would contain contraband or evidence of marijuana-related crimes (namely the offenses of driving under the influence of marijuana, Cal. Veh. Code § 23152(f); possession of open

containers of marijuana inside a vehicle, *id.* § 23222(b); and possession of more than 28.5 grams

of marijuana, Cal. Health & Safety Code § 11357(b)(2)), because the officer smelled a strong odor

of marijuana emanating from the open driver-side window upon his approach. The government

contends that under *Barron* and its progeny, this observation "alone [is] sufficient to constitute

probable cause for a subsequent search for marijuana." *Barron*, 472 F.2d at 1217 (citing *United

States v. Leazar*, 460 F.2d 982 (9th Cir. 1972); *Fernandez v. United States*, 321 F.2d 283 (9th Cir.

1963)); *see also United States v. Solomon*, 528 F.2d 88, 91 (9th Cir. 1975); *United States v.

Delaney*, 216 F.App'x. 674, 676 (9th Cir. 2007).

Defendant counters that California's decriminalization of the possession of less than 28.5

grams of marijuana, which post-dates *Barron*, alters this analysis. *See* Cal. Health & Safety Code

§ 11357(b)(2). Given the change in the law, defendant argues the government cannot show

probable cause because it failed to present any evidence that Officer Haobsh had any training or

experience to reliably detect, based on odor, not only the presence and identity of marijuana, but

also its relative weight or, even volume. California Vehicle Code Section 23222(b), which

prohibits the possession of open containers of marijuana in a vehicle, does not apply if the

marijuana is in the trunk or a closed container and the person has a medical-marijuana

authorization card. Cal. Veh. Code § 23222(b). Mr. Maffei told Officer Haobsh that he had a

medical marijuana card.

Much of the relevant Ninth Circuit caselaw indicating that the odor of marijuana is

sufficient to establish probable cause dates from the 1970s. *See Barron*, 472 F.2d at 1217 (9th Cir.

1973); *Solomon*, 528 F.2d at 91 (9th Cir. 1975); *Delaney*, 216 F.App'x. at 676 (9th Cir. 2007).[19]

The Court of Appeals has not taken a different position regarding the automobile exception and

the handful of district courts to address the question of whether decriminalization changes the

analysis have continued to find probable cause for a vehicle search based on odor. Of these cases,

only one, *United States v. Martinez* addresses a search that itself occurred after the legalization

---

[19] *See also United States v. Collins*, No. 16-CR-00244-SI-1, 2018 WL 306696, at *3 n.5
(N.D. Cal. Jan. 5, 2018) (noting the same).

1    law, known as Proposition 64, became effective on November 9, 2016.  *See Martinez*, No. 17-CR-

2    00257-LHK-1, 2018 WL 3861831, at *5 (N.D. Cal. Aug. 14, 2018).[20]

3         Defendant argues that the court's decision in *Martinez* is flawed because it "relied on cases

4    that arose *before* decriminalization."  The Court agrees.  *Martinez* relied on *Collins* for the

5    assertion that "neither the California Supreme Court nor the United States Supreme Court has

6    limited the automobile exception to situations where the defendant possesses a *criminal* amount of

7    contraband."  *Martinez*, 2018 WL 3861831, at *6 (quoting *Collins*, 2018 WL 306696, at *5)

8    (emphasis in original).  In support thereof, both *Martinez* and *Collins* point to "California courts

9    [that] have upheld searches 'under the automobile exception based on the odor and sight of *even*

10   *small amounts of marijuana*, irrespective of state medical marijuana laws permitting the

11   possession of up to eight ounces and *irrespective of state law making possession of up to 28.5*

12   *grams of non-medical marijuana an infraction only.*"  *Id.* (emphasis in original).  However,

13   neither case considered that Proposition 64 changed California law to provide that "[c]annabis and

14   cannabis products involved in any way with conduct deemed lawful by this section are *not*

15   *contraband* nor subject to seizure, and no conduct deemed lawful by this section shall constitute

16   the basis for detention, *search*, or arrest."  Cal. Health & Safety Code § 11362.1(c) (emphasis

17   supplied).  Thus, the authority cited does not address the impact of Section 11362.1(c) and

18   whether odor alone can still establish probable cause for the marijuana-related offenses at issue

19   here.

20

21        [20] *See Collins*, 2018 WL 306696, at *3-4 (finding that because "[t]he Ninth Circuit and
     district courts within this circuit have repeatedly found that the odor of marijuana alone justifies a
22   search of a vehicle for additional contraband," the search of a vehicle based on the observation of
     a bag of marijuana in plain view was supported by probable cause); *Martinez*, 2018 WL 3861831,
23   at *5 (finding that "under Ninth Circuit law, the odor of marijuana alone provides probable cause
     to search a vehicle for additional contraband"); *United States v. Parker*, 919 F.Supp.2d 1072, 1080
24   (E.D. Cal. 2013) (noting that that if the arresting officer had sworn "as to his qualifications and
     experience and that he smelled marijuana in the vehicle, that, without more, would have
25   constituted probable cause to . . . search the vehicle"); *United States v. Hylton*, No. 17-CR-00086-
     HDM-NJK, 2017 WL 6521322, at *6 (D. Nev. Nov. 15, 2017), *report and recommendation
26   adopted*, No. 17-CR-00086-HDM-NJK, 2017 WL 6520915 (D. Nev. Dec. 20, 2017) (finding "that
     the strong odor of marijuana emanating from Defendant's vehicle established probable cause to
27   search the vehicle for contraband").

28

The government's reliance on the California Court of Appeal's decision *People v. Fews* does not persuade, as it overstates the court's holding. 27 Cal.App.5th 553 (2018); *see also People v. Lee*, 2019 WL 4871480, at *5-8 (CA App. Oct. 3, 2019). Although the government is correct that marijuana remains highly regulated under California law, *Fews* does not provide a basis for the overarching proposition that officers may still search vehicles to determine if the occupants' possession of marijuana conforms to the law based on *odor alone*. In *Fews*, the officers stopped a vehicle in the Tenderloin district of San Francisco, an area known to the officers as one for narcotics sales and use, on February 8, 2017. *Id.* at 556-57. The driver then exited the vehicle, and when an officer approached him, he "smelled the odor of recently burned marijuana emanating from [the driver] and the [vehicle]." *Id.* at 557 (internal quotations omitted). The officer also "recognized from his training and experience that [the driver] held a half-burnt 'blunt,' a factory-rolled cigar that is flattened and split to remove tobacco and add marijuana, and then rerolled." *Id.* The officer then asked the driver "if there was marijuana in the cigar, and [the driver] admitted there was . . . ." *Id.* In reviewing these facts the court found that "[d]ue to the odor or marijuana emanating from the [vehicle] and [the driver], as well as [the driver's] half-burnt cigar, there was a fair probability that a search of the [vehicle] might yield additional contraband or evidence." *Id.* at 563. The court rejected Fews' contention that marijuana, as a whole, is no longer contraband in California following Proposition 64. *Id.*

In determining that the officers in *Fews* had probable cause to search the vehicle, the court found that even though Section 113621(c) provided circumstances under which cannabis or cannabis products could be viewed as *not* contraband, there the officers had probable cause, because it is unlawful to drive under the influence of marijuana or drive in possession of an open container of marijuana. *Id.* The court explained:

> Driving a motor vehicle on public highways under the influence of any drug (see Veh. Code § 23152, subd. (f) ) or while in possession of an open container of marijuana (Veh. Code § 23222, subd. (b) (1); [citation] are not acts "deemed lawful" by section 11362.1. On the contrary, "[s]ection 11362.1 does not permit any person to . . . [p]ossess an open container or open package of cannabis or cannabis products while driving, operating, or riding in the passenger seat or compartment of a motor vehicle" (Health & Saf. Code § 11362.3, subd. (a)(4) ) or "[s]moke or ingest cannabis or cannabis products while driving" a motor vehicle (*id.*, subd. (a)(4)). Here, the evidence of the smell of "recently burned" marijuana and the half-burnt cigar containing marijuana supported a reasonable inference

14

that [the driver] was illegally driving under the influence of marijuana, or, at the very least, driving while possession of an open container of marijuana.[21]

*Id.* Accordingly, the protections afforded by Section 11362.1(c) were not available to Fews.

Context matters. To determine whether the odor of marijuana alone supports probable cause to search the Vehicle, the Court evaluates whether under the totality of the circumstances presented there was "a fair probability that contraband or evidence of a crime" existed to justify the warrantless search.[22] *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Here, the "totality of the circumstances" offered by the government includes: observation of the Vehicle driving through a crosswalk; pedestrians stopping to avoid being hit; observation of the Vehicle abruptly accelerating to reposition it in the parking lot as the officer approached; a strong odor of marijuana emanating from the Vehicle upon contact with the driver; and Mr. Maffei's statements that there was marijuana inside the Vehicle and that he had a cannabis card.[23]

These circumstances here fall well below those articulated in *Fews* and the other similar cases on which the government relies.[24] Here, Officer Haobsh did not see any marijuana either in

---

[21] The government's repeated assertion that *Fews* "demonstrates that . . . marijuana . . . as a whole remains contraband" fails. (*See* Gov't Suppl. 2, 4.) Although the court in *Fews* rejected the defendant's averment that marijuana as a whole is no longer contraband, the court did not ignore the language of California Health & Safety Code Section 11362.1(c). The designation of marijuana as contraband depends on whether it is "involved in any way with conduct deemed lawful." Cal. Health & Safety Code § 11362.1(c).

[22] Moreover, each of the cases upon which the government relies to support its assertion that odor or marijuana alone can establish probable cause actually found probable cause based not on the presence of odor alone, but on the totality of the circumstances. *See supra*, n. 24.

[23] While the government does assert a "totality of the circumstances," its primary focus is that the odor of marijuana "emanating from the automobile . . . alone was sufficient to constitute probable cause for a subsequent search for marijuana." (Opp. at 12 (quoting *Barron*, 472 F.2d at 1216-17).)

[24] *C.f. Barron*, 472 F.2d at 1216-17 (upholding warrantless search of car for illegal aliens and contraband at border because, in addition to agents smelling marijuana, the vehicle "was hanging low in the rear," the defendant "jump[ed] from the car . . . and attempt[ed] to hide"); *Solomon*, 528 F.2d at 90-92 (upholding warrantless search of car based on reasonable suspicion that the vehicle was stolen, in addition to the officer smelling marijuana "[o]nce inside" the car); *Delaney*, 216 F.App'x. at 676 (upholding stop of vehicle "very near the border" based on suspicious circumstances and search of cartop carrier based on the odor of marijuana as well as

the Maffeis' possession or in plain sight in the car, let alone on Mr. Maffei's person; he did not

observe any significant indications that Mr. Maffei was under the influence of marijuana;[25] he did

not indicate, either in his police report or his declaration, that the scent of marijuana he observed

was burnt.  No field sobriety test was performed.  No smell emanated from the trunk, a car carrier,

or other known trafficking storage locations.  Defendant nor her husband attempted to flee.

Instead, this was a routine traffic stop for a broken tail light and failing to yield to pedestrians.

     Further, given that Mr. Maffei indicated to Officer Haobsh that there was marijuana inside

the Vehicle, and that he had a cannabis card, the officer should have considered the same under

California Vehicle Code Section 23222(b) (the only marijuana-related offense to which Officer

Haobsh cites in his report) which does not apply if the marijuana is in the trunk or a closed

container and the person has a medical-marijuana authorization card.  *See* Cal. Veh. Code §

---

"the alerting of the drug-detecting canine"); *Johnson*, 224 F.Supp.3d at 885 (upholding the warrantless search of a vehicle where "[t]he circumstances supporting probable cause here exceeded the odor of marijuana," including that defendant was the only occupant of the vehicle so any odor could be fairly attributed to him, defendant's hand movements in the glove box suggesting he was avoiding revealing contraband, and the officer's observation of "pill bottles and plastic bag," all of which suggested that defendant "was transporting marijuana for sale"); *Collins*, 2018 WL 306696 at *1 (upholding a warrantless search of a vehicle based not on odor but on the observation of a digital scale on the front passenger seat as well as a significant quantity of marijuana in plain view in a clear plastic bag near the front center console, within arms-reach of the child in the passenger seat); *Martinez*, 2018 WL 3861831 at *1, 5-6 (upholding the warrantless search of a vehicle based on the "totality of the circumstances," including, in addition to the odor of marijuana emanating from the vehicle, the officer recognizing defendant from prior police contact, defendant admitting that there was "a little sack and a little blunt" in the car, marijuana seeds in plain view, and the officer's observation "that a panel of the center console was loose" which, in his experience, indicated that it could be a hiding place for illegal drugs, guns, or money); *Parker*, 919 F.Supp.2d at 1077 (upholding warrantless search of a vehicle based on "very strong odor of green marijuana" in a national park, where possession of marijuana is a misdemeanor under federal law); *Hylton*, 2017 WL 6521322 at *6, *report and recommendation adopted*, 2017 WL 6520915 (finding that although the strong odor of marijuana was enough to establish probable cause for a search occurring prior to the legalization of recreational marijuana, "additional facts added to the probable cause determination," including that officers found defendant asleep in a running vehicle in the middle of an intersection, he was dazed and confused when he awoke, and he failed several steps of the Field Sobriety Tests).

[25] Officer Haobsh's observation that Mr. Maffei failed to yield to pedestrians in a cross walk and "abruptly move[d] his car forward" once he had pulled over do not indicate that Mr. Maffei was driving under the influence.  (*See* Report at MJM-00543-44.)

23222(b); *see also United States v. Phillips*, 9 F.Supp.3d 1130, 1138 (E.D. Cal. 2014) ("[W]hen officers become aware that a suspect has a medical marijuana card, the officers must take that information into account when determining whether there is probable cause to conduct a warrantless search or arrest that individual.").[26]  Moreover, Mr. Maffei only advised Officer Haobsh of the presence of marijuana after the officer indicated his intent to search the Vehicle. So, the statement itself could not have contributed to the officer's initial decision to search the Vehicle.

Given this totality of the circumstances, there was not a "fair probability that contraband or evidence of a crime" would be found in the Vehicle. *Luong*, 470 F.3d at 902 (quoting *Gates*, 462 U.S. at 238).  Accordingly, the government has not established "probable cause to believe that the [V]ehicle contain[ed] contraband" such that the "facts . . . would justify the issuance of a warrant" and has therefore failed to meet its burden to persuade the Court that the search of defendant's Vehicle falls within the automobile exception. *Ross*, 456 U.S. at 808-809; *see also Brown*, 563 F.3d at 414.

### 2.  The Inventory Search Exception

Police may impound and search a motor vehicle without a warrant, so long as they do so in conformance with standardized procedures of local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic. *United States v. Johnson*, 889 F.3d 1120, 1125 (9th Cir. 2018).  However, "[t]he fact that an impoundment complies with a state statute or police policy, by itself, is insufficient to justify an impoundment under the community caretaking exception."[27]  *United States v. Cervantes*, 703 F.3d

---

[26] *See also Collins*, 2018 WL 306696, at *5 (finding that although it is not "dispositive," "possession of a cannabis card is part of the totality of the circumstances that the officer must assess in determining if there is probable cause"); *United States v. White*, 732 F.App'x. 597, 598 (9th Cir. 2018) (finding that probable cause existed for a search in Nevada based on the odor of marijuana after the state had legalized medical marijuana but where defendant, who had a medical marijuana card, "never explained this to the investigating officers, and possession of nonmedical marijuana was then still a state crime").

[27] The Court notes that California Vehicle Code Section 22561(p) allows, but does not require, peace officers to remove vehicles from public roads, or private property, when the driver

1135, 1142 (9th Cir. 2012) (internal quotations omitted).

Whether an impoundment is reasonable and warranted under the community caretaking doctrine depends on "the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005). In *City of Cornelius*, the Ninth Circuit held that "[t]he state has the right to allow the driver to drive away with the vehicle only if he or she is able to do so in compliance with all regulations . . . ," stating that "[t]he violation of a traffic regulation justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a public location without continuing its illegal operation." *Id*. at 865. The government "bears the burden of establishing that a vehicle's impoundment and search are justified" under the exception to the warrant requirement. *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016).

The government asserts three bases for its contention that towing the Vehicle was in service of an independent community caretaking function. Thus: first, the Vehicle was parked in a private parking lot, outside of a parking stall and blocking other stalls; second, Officer Haobsh's decision to impound the vehicle was reasonable in light of the driver's driving violations combined with the officer's concerns that even if he released the Vehicle to defendant, she may allow her husband to drive again, potentially leading to more reckless behavior; and third, because the broken tail light violated the California Vehicle Code, defendant could not have legally operated the Vehicle if it were released to her.

As an initial matter, the government's second argument regarding the defendant's intent does not persuade as it is based on pure speculation and lacks legal or objective support. *See City of Cornelius*, 429 F.3d at 866 ("[T]he purpose of the community caretaking function is to remove vehicles that are *presently* impeding traffic or creating a hazard. The need to deter a driver's

---

of the vehicle is given notice to appear for a violation of Section 14601.1(a), driving with a suspended license. Cal. Veh. Code § 22561(p). Further, SMPD's towing policy suggests impoundment should not be automatic. Thus: "consideration should be given to leaving a vehicle at the scene in lieu of storing, provided the vehicle can be lawfully parked and left in a reasonably secured and safe condition . . . [w]henever the licensed owner of the vehicle is present, willing, and able to take control of any vehicle not involved in criminal activity." (Haobsh Decl., Ex A.)

unlawful conduct is by itself *insufficient to justify a tow* under the 'caretaker' rationale.")

(emphasis supplied); *see also Caseres*, 533 F.3d at 1075 (questioning whether "impounding an

unlicensed driver's car to prevent its continued unlawful operation" is a valid community

caretaking function to authorize impoundment). The noted driving behavior itself was not

particularly remarkable. Unfortunately, many drivers do not yield to pedestrians crossing the

street if the driver enters the crosswalk first. Mr. Maffei pulled over immediately and repositioned

his vehicle in a safer position. There is no indication of swerving, speeding, or recklessness. That

the stop occurred on a Sunday afternoon also suggests less traffic.

As the first and third rationales turn on the capacity of the defendant (as the owner of the

Vehicle) to safely relocate the Vehicle, the Court addresses them jointly.[28] "An impoundment

may be proper under the community caretaking doctrine if the driver's violation of a vehicle

regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to

remove the vehicle from an exposed or public location." *City of Cornelius*, 429 F.3d at 865; *see

also United States v. Gutierrez*, 995 F.2d 169, 171 (9th Cir. 1993) ("After determining that neither

Gutierrez nor Cervantes possessed a valid driver's license, the officers advised them that they

were free to go, but that they could not drive the [vehicle]."). "The violation of a traffic regulation

justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a public

location without continuing its illegal operation." *City of Cornelius*, 429 F.3d at 865. However,

"a decision to impound a vehicle that is not consistent with the police's role as a 'caretaker' of the

streets may be unreasonable." *Id.* (internal citations omitted). Moreover, "[t]he policy of

impounding the car without regard to whether the defendant can provide for its removal is patently

unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Id.*

(internal citations omitted).

---

[28] The Court notes that the government does not assert that Officer Haobsh impounded the vehicle from the parking lot in order to protect the Vehicle from vandalism or theft. *See* Opp. at 14-16; *c.f. Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 n.4 (9th Cir. 1993) ("In discharging their community caretaking functions, it was not unreasonable for the arresting officers to protect the car from vandalism or theft by having it towed.").

Officer Haobsh pulled over the Vehicle, in part, due to its violation of California Vehicle Code Section 25950, which mandates that any light emitted from rear facing tail lamps must be red. Cal. Veh. Code § 25950(b). Based thereon, the government argues that "[d]efendant could not legally drive the [Vehicle] with a broken rear tail lamp" and thus the impound of the Vehicle was justified. *See United States v. Cartwright*, 630 F.3d 610, 616 (7th Cir. 2010).

The Court disagrees. California law does not prohibit all operations of a vehicle that do not comport with specific equipment requirements, such as a broken tail light. *See* Cal. Veh. Code § 25950. Instead, Section 24004 of the California Vehicle Code provides as follows:

> No person shall operate any vehicle . . . after notice by a peace officer . . . that the vehicle is in an unsafe condition or is not equipped as required by this code, *except as may be necessary to return the vehicle . . . to the residence* or place of business of the owner or driver or to a garage, until the vehicle and its equipment have been made to conform with the requirements of this code.

*Id.* § 24004 (emphasis supplied). Thus, defendant could have legally driven the Vehicle from the Walgreens parking lot to her residence or to a garage.[29] Because defendant was able to "remove the vehicle from [the] public location without continuing its illegal operation," the traffic violation of Section 25950(b) does not justify impound of the vehicle.[30] *See City of Cornelius*, 429 F.3d at 865; *see also Caseres*, 533 F.3d at 1075 (questioning whether "impounding an unlicensed driver's car to prevent its continued lawful operation" justifies impound where the car was parked two houses away from the owner's home on a residential street, neither impeding traffic nor imposing a hazard, and unlikely to be subject to theft or vandalism).

The Court finds that the government has not established that SPMD impounded the Vehicle in furtherance of community caretaking purpose and has therefore failed to meet its

---

[29] This conclusion finds further support in Officer Haobsh's own report, which indicates that upon defendant's release on bail, she returned to the SMPD "requesting a tow release for [the Vehicle] and it was granted" without any limitation or citation related to the broken tail light. (*See* Report at MJM-00550.)

[30] The government's reliance on *Cartwright* is inapposite as it represents non-binding interpretation of Indiana law. *Cartwright*, 630 F.3d at 616. Moreover, the Indian Motor Vehicle Code upon which *Cartwright* relies does not include an analogous provision allowing for return of a noncomplying vehicle. *See* Ind. Code § 9-19-1-4.

1   burden to establish that the search of defendant's Vehicle falls within the inventory search

2   exception.  *Johnson*, 889 F.3d at 1125; *Brown*, 563 F.3d at 414.

3       Accordingly, the Court determines that the warrantless search of defendant's Vehicle on

4   November 5, 2017 violated the Fourth Amendment as neither proffered exception justifies the

5   warrantless search.  The Court now turns to whether the evidence should be excluded given the

6   constitutional violation.

7       **C.  Exceptions to the Exclusionary Rule**

8       "The exclusionary rule applies both to direct products of an illegal search – i.e., the

9   physical evidence found during the search itself – and to the indirect products of the illegal search

10  – i.e., statements of physical evidence subsequently obtained as part of a result of the search – if

11  they bear a sufficiently close relationship to the underlying illegality."  *United States v. Shetler*,

12  665 F.3d 1150, 1157 (9th Cir. 2011) (internal quotation marks omitted).  The government bears

13  the burden of establishing that evidence following an illegal search was not "the product of the

14  illegal search" or, if it was, that it was nevertheless so attenuated from the search that suppression

15  was not warranted."  *Id.*

16      The government avers that even if the warrantless search of the Vehicle was not justified,

17  the evidence found during the Vehicle search, and the subsequent search of defendant's home,

18  should not be suppressed for three reasons: (1) the evidence would have been discovered

19  inevitably; (2) the search warrant issued for defendant's home was valid and executed in good

20  faith; and (3) even if the warrant was not valid, the evidence was obtained in good faith and

21  objectively reasonable reliance on the warrant.  The Court addresses each.

22      1.   The Inevitable Discovery Doctrine

23      The inevitable discovery doctrine, an exception to the exclusionary rule, "permits the

24  government to rely on evidence that would have ultimately been discovered absent a constitutional

25  violation."  *United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009).  The purpose of this rule is

26  to "block setting aside convictions that would have been obtained without police misconduct."  *Id.*

27  In order to avail itself of this exception, the government must show, by a preponderance of the

28  evidence, that the information would have been discovered inevitably by lawful means, rendering

the deterrence rationale for the exclusionary rule with so little basis that exclusion would serve virtually no function. *Id.*

The government contends that the search was inevitable because of the impoundment. This argument is entirely circular and ignores a key component of the inevitable discovery rule – that the evidence must be inevitably discoverable by *lawful* means. *See id.* Instead, the government appears to argue that in the event that the warrantless search of the Vehicle was impermissible because the automobile exception did not apply and the inventory search at the scene was not permissible, the evidence was inevitably discoverable because the Vehicle would have been searched pursuant to mandatory policy following impoundment. This argument ignores the fact that without satisfying the community caretaking function, an impoundment could not have occurred, nor, any attendant search, regardless of the timing. Accordingly, the Court finds that the inevitable discovery doctrine does not apply.[31]  *See id.*

### 2.  Valid Warrant Exception

The government argues that the evidence obtained from the search of defendant's home subject to the state warrant should not be suppressed because the warrant was valid. While the government submits that only two pages of the seven-page warrant application discuss the search of the Vehicle, the balance of the information is inextricably connected to the impermissible Vehicle search. Specifically, the warrant application relies on the following information: interviews of defendant and her husband following their arrest based on the results of the Vehicle search; recordings of defendant and her husband when they were placed in the patrol vehicle while

---

[31]  The Court finds superficial and unpersuasive the government's argument that "[i]n light of the absence of any indication of deliberate, reckless, or grossly negligent conduct on the part of the officers of the [SMPD], the evidence derived from the search of the vehicle should not be suppressed." (Opp. at 17.)  The cases to which the government cites reflect attenuating factors not present here. *See Herring v. United States*, 555 U.S. 135 (2009) (declining to apply the exclusionary rule where searching officer reasonably relied on another law enforcement officer's negligence); *Utah v. Streiff*, 136 S. Ct. 2056, 2059 (2016) (declining to apply the exclusionary rule when the searching officer's "discovery of [an] arrest warrant attenuated the connection between the unlawful stop and the evidence seized incident to arrest").  Moreover, "[t]he Supreme Court has never applied the good faith exception to excuse an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights." *United States v. Camou*, 773 F.3d 932, 945 (9th Cir. 2014).

they were waiting to be transported to the SMPD station for further questioning following that arrest; the officers' observations from a protective sweep of defendant's home during a welfare check on defendant's children, while defendant was in custody; and statements by defendant's children to the officers during the welfare check.

As all of this information stemmed from the search of defendant's Vehicle, the government may not rely on the information to support the validity of the subsequent warrant.[32] *United States v. Wanless*, 882 F.2d 1459, 1465 (9th Cir. 1989) ("It is now fundamental that evidence which is obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search."). The remaining untainted evidence cited in support of the warrant, namely, the affiant's training and experience and opinions formed based thereon coupled with her observations, would not provide a neutral magistrate with probable cause to issue a warrant, therefore rendering the warrant invalid. *See United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014); *see also United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (finding that conclusions of affiant unsupported by underlying facts cannot establish probable cause). Accordingly, the Court finds that the valid warrant exception does not apply. *See Shetler*, 665 F.3d at 1157.

### 3. Good Faith Exception

Suppressing evidence obtained from a defective warrant is an "extreme sanction" that requires a high bar from the moving party. *United States v. Leon*, 468 U.S. 897, 916 (1984). In

---

[32] The Court is not persuaded by the government's argument that defendant's consent to enter her apartment, coupled with the affiant's "subsequent observation of evidence while permitted to be in the apartment, and application for a search warrant, constitute intervening circumstances that would purge any potential taint from the vehicle search." (Opp. at 18.) Unlike the defendant in *United States v. Wellins*, upon which the government relies, nothing in the record suggests that defendant was permitted to consult her attorney before she provided post-*Miranda* consent to enter her apartment. *See Wellins*, 654 F.2d 550, 555-56 (9th Cir. 1981) ("The crucial factor in this case is that Wellins was permitted to consult with his attorney."). Moreover, defendant provided consent to enter and search her apartment only after she expressed concern about her two young children, then aged twelve and seven, who would be alone in the apartment with no adult to care for them if defendant and her husband went to jail for the night. (*See* Report at MJM-00545; Warrant App. at MJM-00567.) Accordingly, the government has failed to show attenuation from the taint of the illegal Vehicle search.

*Leon*, the Supreme Court held "that the Fourth Amendment exclusionary rule should not be applied so as to bar the use of the prosecutor's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warranted issued by a detached and neutral magistrate but ultimately found to be invalid." *United States v. Vasey*, 834 F.2d 782, 789 (9th Cir. 1987) (citing *Leon*, 468 U.S. at 900, 926). "In *Leon*, the officer presented lawfully obtained evidence to a neutral magistrate. The magistrate erroneously found that this evidence established probable cause and consequently issued a warrant[,]" which a subsequent reviewing court ruled should not have been issued for lack of probable cause. *Id.* However, the "evidence obtained in the warrant search was deemed admissible . . . because the officer acted in good faith . . . both in gathering and presenting evidence to a neutral magistrate." *Id.* By contrast, the "fact that [an officer] conducted a warrantless search of the vehicle which violated [the defendant's] Fourth Amendment rights precludes any reliance on the good faith exception." *Id.*

Here, Officer Haobsh conducted an illegal warrantless search of defendant's Vehicle and presented tainted evidence obtained in this search, as well as the resulting search of defendant's apartment, to a magistrate in an effort to obtain a search warrant. As in *Vasey*, the search warrant here was issued, at least in part, on the basis of this tainted evidence. *Id.* Thus, "[t]he constitutional error was made by the officer in this case, not by the magistrate as in *Leon*." *Vasey*, 834 F.2d at 789. Evidence seized during an illegal search is "tainted and should not [be] included in the affidavit for a search warrant." *Id.* at 788. Accordingly, the Court finds that the good faith exception articulated in *Leon* does not apply to the instant case. *See id.*

## IV.    CONCLUSION

Thus, the Court **GRANTS** defendant's motion to suppress and excludes from evidence all fruits of the Vehicle search, including evidence recovered from the search of defendant's home pursuant to the search warrant obtained following defendant's arrest.

This Order terminates Docket Number 44.

**IT IS SO ORDERED.**

Dated: October 11, 2019

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE