**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 18-cv-0174-YGR |
|---|---|
| Plaintiff, | |
| vs. | ORDER DENYING MOTION TO ADMIT EVIDENCE |
| MARTHA JULIA MAFFEI, | Re: Dkt. No. 94 |
| Defendant. | |

The government filed a motion to admit evidence on May 12, 2021 in advance of trial as previously ordered by this Court. (Dkt. No. 94.) Having reviewed the filings, the Court ordered and held an in-person evidentiary hearing on the motion on August 30, 2021. Having carefully considered the briefing, arguments, and evidence presented, the Court **DENIES** the motion to admit.

**I.   BACKGROUND**

At some point prior to November 2017, the Department of Labor, Office of Inspector General ("DOL-OIG") opened an investigation into defendant Martha Julia Maffei's involvement in an alleged scheme to defraud timeshare owners by posing as either timeshare brokers representing potential buyers or Special Agents of the DOL-OIG.

On November 5, 2017, independently, but during the course of the DOL-OIG's investigation into the scheme, the San Mateo Police Department ("SMPD") conducted an enforcement stop on a Toyota Camry. Defendant was a passenger in the car. The officers conducted an "inventory search" of the vehicle. During the search, the officers recovered several flat rate United States Postal Service envelopes addressed to various individuals (later identified as victims) and several financial documents (later revealing large deposits to a bank account in Nicaragua). SMPD arrested defendant for possession of narcotics for sale, transportation/sales of narcotics, and conspiracy to commit a crime.

After learning of defendant's arrest, the DOL-OIG reached out to SMPD to ask about the details surrounding the arrest. At that time, SMPD informed the DOL-OIG about the evidence it had seized from defendant's car. Special Agent Collins from the DOL-OIG visited the station and viewed the seized evidence. Then, shortly after defendant's arrest, served subpoenas and sought search warrants for defendant's bank, social media, phone, and Western Union records. The DOL-OIG also followed up with victims who had previously reported the scheme to law enforcement agencies and contacted the individuals who were identified by the evidence seized from the car.

Prior to defendant's arrest, the government had information from four victims (L.B., N.K, M.S., and J.P.) about an apparent fraud scheme, defendant's post office box information, her Gmail address, and a comprehensive report that included several phone numbers belonging to defendant, amongst other information.

On April 26, 2018, defendant was charged in a twenty-seven count indictment related to the alleged scheme to defraud, including charges of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, laundering in monetary instruments in violation of 18 U.S.C. § 1956, and engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957.

Defendant moved to suppress the evidence based on the Fourth Amendment. On October 11, 2019, the Court granted defendant's motion to suppress all fruits of the unlawful search and seizure of defendant's car and home. (Dkt. No. 55.)

The government now seeks, in advance of trial, a ruling that it will be allowed to admit defendant's phone records, bank records, social media records, and live testimony from victims. At the evidentiary hearing, the government called one witness, Special Agent Collins, to present evidence on the government's process and procedure during its investigation into defendant. Defendant did not call any witnesses.

**II.   ANALYSIS**

The government seeks to admit the following evidence from various accounts belonging to defendant: (1) defendant's AT&T records; (2) U.S. Bank records; (3) Bank of America records;

2

1  (4) Citibank records; (5) Chase records; (6) Western Union records; and (7) Google and Facebook
2  records. It also seeks admission of live witness testimony.
3      The government has the burden of establishing by preponderance of the evidence that the
4  evidence it seeks to admit is not "the fruit of the poisonous tree." *United States v. Twilley*, 222
5  F.3d 1092, 1097 (9th Cir. 2000) (*quoting United States v. Johns*, 891 F.2d 242, 245 (9th Cir.
6  1989)). Namely, the government must show by preponderance of the evidence that one of the
7  following exceptions apply to allow the admission of the proffered evidence: (1) independent
8  source; (2) inevitable discovery; (3) or attenuation basis. *See Nix v. Williams*, 467 U.S. 431, 444
9  (1984) (inevitable discovery); *United States v. Cales*, 493 F.2d 1215, 1216 (9th Cir. 1974)
10 (independent source); *United States v. Holmes*, 505 F.3d 1288, 1293 (D.C. Cir. 2007)
11 (attenuation); *see generally Lego v. Twomey*, 404 U.S. 477, 488 (1972 (noting that preponderance
12 is the general standard for the government to prove admissibility of evidence under the Fourth
13 Amendment.) The Court discusses each.

### A.  Legal Framework

First, under the independent source doctrine, "evidence initially discovered during, or as a consequence of, an unlawful search, but later acquired independently from activities untainted by the initial illegality" is admissible. *Murray v. United States*, 487 U.S. 533, 537 (1988). The Supreme Court has held that "[s]o long as a later, lawful seizure is genuinely independent of an earlier, tainted one . . . there is no reason why the independent source doctrine should not apply." *Id.* at. 542. The ultimate question the Court must decided in determining whether the independent source doctrine applies is whether the evidence is in fact independent and unrelated to the illegal search. *Id.* at 542; *U.S. v. Johns*, 891 F.2d 243, 246 n.5 (9th Cir. 1989). The independent source doctrine does not apply where "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if the information obtained during the entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray,* 487 U.S. at 542.

Second, in order to demonstrate the admissibility of evidence under the inevitable discovery exception, the government must establish by a preponderance of the evidence that the evidence inevitably would have been discovered by lawful means. *Nix*, 467 U.S. at 446. The

government must provide a factual basis and point to evidence demonstrating that the government would have discovered the evidence absent the illegal search, not merely whether the government could have obtained the evidence in other ways. *See United States v. Davis*, 332 F.3d 1163, 1171 (9th Cir. 2003); *see also United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1400 (9th Cir. 1989) (finding that the inevitable discovery exception did not apply where the government failed to show that the officer would have in fact questioned the occupants in a van absent an illegal search that revealed incriminating information). The government can meet its burden by establishing that, by following routine procedures, the government would have inevitably uncovered the evidence. *United States v. Martinez–Gallegos,* 807 F.2d 868, 870 (9th Cir.1987).

Third, "under the 'attenuation doctrine,' evidence is admissible when 'the connection between the illegality and the challenged evidence' has become so attenuated 'as to dissipate the taint caused by the illegality.'" *United States v. Gorman*, 859 F.3d 706, 718 (9th Cir. 2017) (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989). Physical evidence is not sufficiently attenuated where the unlawful search significantly directs the investigation to the evidence*. See Frimmel Management, LLC v. United States*, 897 F.3d 1045, 1054 (9th Cir. 2018) (finding that "because information stemming from the unlawful search by the sheriff's department had sparked ICE's interest in investigating the business, and because 'the identity evidence that resulted from the [sheriff's department] raid 'significantly directed' [ICE's] subsequent investigation, the evidence produced in response to the subpoena remained tainted by the initial unlawful search.); s*ee also United States v. Gorman,* 859 F.3d 706, 716-17 (9th Cir. 2017) (explaining that there is no attenuation when information learned through an unlawful search "tends to significantly direct the investigation to the evidence in question").

However, the attenuated-basis exception is applied more generously when the challenged derivative evidence is live-witness testimony rather than documentary evidence. *Ramirez-Sandoval*, 872 F.2d at 1396. In determining whether live testimony is "free from the taint of illegality" the following factors are relevant: (1) the degree of free will exercised by the witness; (2) whether the identity of the witness was previously known to law enforcement before the illegal search or seizure; (3) whether the illegally obtained evidence was used in questioning; and (4) the

amount of time that lapsed between the illegal act and the initial contact with the witness. *U.S. v. Ceccolini*, 435 U.S. 268, 277-79 (1978); *see also Ramirez-Sandoval*, 872 F.2d at 1397. The greater the willingness of the witness to freely testify, the greater the likelihood that he or she will be discovered by legal means. *Ceccolini*, 435 U.S. at 277.

**B.     Categories of Evidence**

*1.     AT&T Records*

The government argues that defendant's AT&T records are admissible under the independent source exception because the government had defendant's phone number prior to the SMPD conduct and obtained the records afterwards through a valid subpoena. While the government might have obtained the records by way of a valid subpoena, the government failed to establish by a preponderance of the evidence that its decision to subpoena the records was independent of the information discovered during the SMPD conduct. *See Murray v. U.S*. at 542 (explaining that the independent source doctrine does not apply where "the agents' decision to seek the warrant was prompted by what they had seen during illegal search."). The government did not shown that the decision to subpoena the records was unrelated to the illegal search. For instance, the government failed to explain why it waited over five months before subpoenaing the telephone records when the government had defendant's telephone numbers since July 7, 2017. Because the government has not met its burden in establishing that defendant's AT&T records were derived independent of the information found during the SMPD conduct, the Court finds that the independent source doctrine does not apply to these records.

Accordingly, the Court **DENIES** the motion to admit defendant's AT&T records.

*2.     U.S. Bank Records*

The government's independent source argument as to the U.S. Bank records fails for the same reasons mentioned above. The government failed to establish that the U.S. Bank records were obtained independent of the illegal search. The government admits that "defendant's account number was observed on documents seized by SMPD and subsequently provided to DOL-OIG." (Mot. at 11). Further, in asking the U.S. Attorney's Office for assistance with the subpoena for these bank records, the government referenced and attached the illegal evidence. *See* Declaration

5

of Chris Collins ("Decl. Collins"), Ex. 11.  The government's reference to the illegally seized information indicates that the illegal evidence prompted the government to seek subpoenas for the bank records.  The government has not met its burden of showing otherwise.  Thus, the Court finds that the independent source doctrine does not apply to the U.S. Bank records.

The Court also finds that the government has not met its burden of establishing that these records would have been inevitably discovered absent the illegal search.  While the government notes that a "next reasonable investigative step would have been to subpoena the defendant's U.S. Bank account records," the government did not establish, either through evidence or during the evidentiary hearing, that it would have actually obtained defendant's account number which would have been necessary for the government to subpoena the bank records. Not all cases are investigated.  This one was because of the evidence recovered during the illegal search.  The government failed to provide the Court with any basis to determine that the government would have investigated M.S.'s checks and sought information about defendant's account absent the illegal search.

This is particularly true in light of the government's prior actions with respects to an earlier victim, N.K.  As early as July 12, 2017, N.K. reported that he had financial information, including the bank information of a person requesting that he send money in furtherance of the scheme.  The government did not attempt to follow-up with N.K. for this financial information or even interview him until after the SMPD conduct.  Moreover, the government failed to explain what it had actually done with M.S's check images between the time it received them and its inspection of the evidence obtained from the trunk of the vehicle.  Because the government failed to provide a factual basis and point to evidence demonstrating that the government would have inevitably discovered both defendant's bank account number and the bank records, the Court finds that the inevitable discovery exception does not apply.

Accordingly, the Court **DENIES** the motion to admit these records.

### 3. *Bank of America Records*

The government argues that defendant's Bank of America records are admissible because defendant's account number was available to the government through an independent source: A.B.

6

However, the government has not shown that A.B. is an independent source. Indeed, the government only learned of A.B.'s name and address after viewing it on a piece of mail that was seized from the trunk of the vehicle. The government has not shown that it would have discovered A.B. absent the SMPD conduct.

While A.B. had previously submitted complaints to the Federal Bureau of Investigation ("FBI") about the scheme, there is no indication that the government would have discovered the complaints absent the SMPD conduct. A.B. submitted her complaints to the FBI approximately seven months prior to the DOL-OIG's interview, but the government only interviewed her after the SMPD conduct. The government did not offer any testimony or proffer any evidence that it attempted to interview A.B. before learning of the additional evidence from the SMPD. That is because the government only learned of A.B. and her complaints after the SMPD conduct and only then did the government search the FBI's Internet Crime Complaint Center ("IC3") database. Thus, the Court finds neither A.B. nor her complaints qualify as independent sources.

Likewise, the inevitable discovery exception does not apply. The government has failed to show how, absent the SMPD conduct, the government would have discovered A.B.'s complaints (which were over seven months old at the time of A.B.'s interview). Absent additional information, the government has not shown by a preponderance of the evidence that the Bank of America records are admissible under either the independent source or inevitable discovery exceptions.

Accordingly, the Court **DENIES** the motion to admit defendant's Bank of America records.

### 4. *Citibank Records*

The government argues that defendant's Citibank records are admissible under both the independent source and inevitable discovery exceptions even though the government identified defendant's Citibank account number on evidence seized during the SMPD conduct. The government avers that agents could have also learned of defendant's account number through M.M. and M.B., both of whom were identified in the U.S. Bank records.

Because the U.S. Bank records are inadmissible, as discussed above, the defendant's Citibank records, which the government argues could have been derived from the U.S. Bank

1 records, are also inadmissible. Further, a review of the interview report of M.B. shows that the
2 government used the illegal evidence to convince M.B. to cooperate in the interview. (*See* Decl.
3 Collins, Ex. 21). Thus, the Court finds that the Citibank records do not fall under the independent
4 source exception.

For similar reasons, the Court finds that the inevitable discovery exception does not apply.
The government does not describe how it would have found defendant's Citibank account number
absent the illegal search.

Accordingly, the Court **DENIES** the motion to admit the Citibank records.

### 5. *Chase Records*

Like the Citibank records, the government argues that defendant's Chase records are admissible because defendant's Chase account number was available through an independent source, M.B. As explained above, M.B. was only identified after the government reviewed the U.S. Bank records (which are inadmissible) and the government used the illegal evidence in questioning M.B. Thus, the government has not met its burden of establishing that M.B. is an independent source.

Accordingly, the Court **DENIES** the request to admit defendant's Chase records.

### 6. *Western Union Records*

The government avers that both the independent source and inevitable discovery exceptions apply to the Western Union records because the government would have sought defendant's Western Union records based on the government's review of defendant's Facebook account and bank records. However, the government admits that "the subpoena was sent because of money transfer receipts found by SMPD" in defendant's car. (Mot. at 16). Thus, the independent source exception does not apply.

With respect to the inevitable discovery exception, the Court further finds that the government has not met its burden of establishing that the Western Union records would have been inevitable discovered. The government has not shown that it would have searched for defendant on Facebook absent the SMPD conduct. Further to this point, the government does not indicate when it searched for defendant on Facebook and whether such a search would have

8

normally occurred. The government also failed to establish whether the government would have subpoenaed the records absent the illegal search. Thus, the government has not met its burden of establishing that these records would have been inevitable discovered.

Accordingly, the Court **DENIES** the motion to admit with respect to these records.

*7.     Google and Facebook Records*

The government argues that the Google and Facebook records are admissible under the independent source exception because the government already had defendant's email and because the DOL-OIG's subpoena was based on information that would have been discovered just by looking up defendant's Facebook account. The government has not established that the decision to subpoena the Google records was not prompted by the illegal evidence. Indeed, the government obtained defendant's email addresses on July 7, 2017, but did not subpoena the records until after reviewing the records obtained by the SMPD's illegal search of the vehicle. The government provides no explanation for the timing of its subpoena requests.

Moreover, the government admits that the warrants relied on information from A.B. and S.B., two witnesses who were both interviewed after the arrest (and not independent sources for the reasons discussed below). Further, the affidavits both include information from Agent Collin's review of defendant's U.S. Bank account records. (*See* Exs. 16, 17). The government failed to meet its burden of establishing that the SMPD conduct did not prompt the DOL-OIG to seek the records. Thus, the Court finds that the independent source exception does not apply.

Accordingly, the Court **DENIES** the government's motion with respect to these records.

*8.     Live Testimony of Victims*

Finally, the government seeks to admit the live testimony of eight victims, arguing that the victims' live testimony is admissible under the attenuated basis exception. With the exclusion of M.S., who was interviewed before the SMPD conduct, the Court finds that the government did not meet its burden in establishing that the SMPD conduct did not significantly direct the government's investigation into the witnesses.

First, the government admits that six of the eight witnesses "were first identified by DOL-OIG during the search of defendant's car," and that the DOL-OIG "generally questioned the

9

victims about the envelopes found in defendant's car". (Mot. at 19.)

Second, the government has not given the Court a basis to determine that it would have identified or interviewed the proffered witnesses absent the SMPD conduct. The fact that some witnesses previously submitted complaints about the scheme, but the government failed to respond to those complaints highlights the impact that the SMPD conduct had on the government's investigation into these witnesses. For instance, on July 12, 2017, N.K. reported to the U.S. Marshals Service in the Southern District of New York that beginning around April 2017 he had been contacted and provided fraudulent documents as part of a fraudulent scheme. (Decl. Collins ¶ 79.) N.K. offered to provide financial information regarding one of the perpetrators of the scheme. (*Id.*, Ex. 6.) The government did not follow-up with N.K. or attempt to interview him until after the SMPD conduct. (*Id.* at. ¶ 79.)

Similarly, M.M. reported the scheme to her local sheriff's office in April 2017 and was told that her information would be forwarded to the FBI. M.M. did not hear from DOL-OIG until after the SMPD conduct. The same is true of A.B. and other witnesses. The government has not established a basis for the change in pace and efforts in interviewing the witnesses absent defendant's arrest. Thus, the Court finds that the government has not met its burden in establishing that its investigation into the witnesses was not "significantly directed" or "untainted" by the SMPD conduct.

Accordingly, the Court **DENIES** defendant's motion to admit any testimony or evidence from any post-SMPD conduct witnesses.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the government's motion to admit the evidence identified in this Order.

This Order terminates Docket Number 94.

**IT IS SO ORDERED.**

Dated: September 17, 2021

*[signature]*
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**